590 A.2d 802

**John J. McMENAMIN, Appellant,**

**v.**

**Margaret M. TARTAGLIONE, John F. Kane and Maurice Floyd in their individual capacities as Philadelphia City & County Commissioners and Norman A. Jenkins, Anthony J. Defino, James J. Fitzgerald, III, Judges of the Court of Common Pleas Acting collectively as the Board of Elections in the stead of the City Commissioners, Appellees.**

Commonwealth Court of Pennsylvania.

Argued April 4, 1991.

Decided April 23, 1991.

272

Louis W. Fryman, with him, David B. Snyder, Fox, Rothschild, O'Brien & Frankel, Philadelphia, for appellees.

Arthur R. Shuman, Wyndmoor, for appellant.

Before CRAIG, President Judge, DOYLE, J., and BARRY, Senior Judge.

DOYLE, Judge.

This is an appeal by John J. McMenamin, a Republican elector, from an order of the Court of Common Pleas of Philadelphia County which, after a hearing, dismissed McMenamin's complaint in equity. McMenamin, who resides in the City of Philadelphia (City), had sought a declaration that Ronald D. Castille, former District Attorney of the City and the intervenor, be declared ineligible to seek the office of Mayor of the City in the 1991 municipal election. In addition to the trial court's order, we also have before us a motion to quash filed by Castille. The basis of

the motion to quash is that the Pennsylvania Supreme Court has exclusive appellate jurisdiction over the instant appeal pursuant to Section 722(2) of the Judicial Code, 42 Pa.C.S. § 722(2).

We first consider the motion to quash. Section 722 pertinently states:

The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases:

. . . .

(2) The right to public office.

The Supreme Court has discussed this language in *Smethport Area School District v. Bowers*, 440 Pa. 310, 317, 269 A.2d 712, 716 (1970), where it explained:

The question is thus presented whether a district superintendent of a school district, such as appellant, is the holder of a 'public office', and whether his present complaint involves his 'right' to such office.

... While the point is not free of difficulty, we are satisfied that the present case does not come within the ambit of 'right to public office'. It is unnecessary and would be unwise to try to indicate in this opinion the complete content of the clause [right to public office]. The 'right' to office undoubtedly includes questions of qualification, eligibility, regularity of the electoral or appointive process and other preconditions to the holding of a particular public office. We think 'right' should not normally include an appraisal of the sufficiency of or ruling upon evidence or other allegedly irregular aspects of the proceedings before a hearing tribunal resulting in an officeholder's discharge from his position. The appeal from the Board's action in this case alleged these kinds of errors, together with other charges of denial of procedural due process.

In *Bowers*, an incumbent school district superintendent had been dismissed by the Board of School Directors of the Smethport (McKean County) Area School District. He ap-

pealed his dismissal to the Court of Common Pleas of McKean County under the Local Agency Law.[1] That court dismissed the appeal concluding that it lacked jurisdiction because the Smethport Area School District was not a local agency. The Court indicated its view that the appeal should have been filed in the Court of Common Pleas of Dauphin County, the predecessor to this Court, under the Administrative Agency Law.[2] The superintendent then filed a timely appeal in the Dauphin County Common Pleas Court. That, too, was dismissed for lack of jurisdiction, the Dauphin County Common Pleas Court being of the opinion that the school board was neither an "agency of the Commonwealth" under the Administrative Agency Law, nor a "local agency" under the Local Agency Law. Appeal from both common pleas court decisions to the Supreme Court followed. There the Supreme Court first had to determine which *appellate* court had to decide the issue of which court of common pleas had jurisdiction, and this threshold issue entailed a discussion of whether the Superior Court was the proper appellate court (at that time the Superior Court had jurisdiction over appeals under *both* the Administrative Agency Law and the Local Agency Law) or whether the Supreme Court itself had appellate jurisdiction under Section 2 of the Act of August 14, 1963, P.L. 819,[3] which provided that the Supreme Court had exclusive jurisdiction over appeals concerning "the right to public office." That same provision now appears in Section 722(2) of the Judicial

1. Jurisdiction had been asserted under the Local Agency Law, Act of December 2, 1968, P.L. 1133, *formerly* 53 P.S. §§ 11301–11308, *repealed by* Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 P.S. § 20002(a) [1429]. The current version of the Local Agency Law appears at 2 Pa.C.S. §§ 551–555, 751–754.

2. The Act of June 4, 1945, P.L. 1388, *as amended,* 71 P.S. § 1710.1, *repealed by* Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 P.S. § 20002(a) [1244]. The current version of the Administrative Agency Law appears at 2 Pa.C.S. §§ 501–508, 701–704.

3. *Formerly* 17 P.S. §§ 191.1–191.6, *repealed by* Section 509 of the Act of July 31, 1970, P.L. 673 (which amended Section 7(c) of the Act of June 24, 1895, P.L. 215, *formerly* 17 P.S. § 184).

Code and the identical phrase, "the right to public office," is employed.

The Supreme Court in *Bowers* held that it did not have jurisdiction and stated that while "public education is an important function of government, and that a district superintendency is an important office within the educational structure . . . that in the context of the jurisdictional statute the emphasis should be on the governmental aspect of public office in the popular sense of the term governmental . . . [and] this, in our opinion, does not include education" (footnotes deleted). *Id.,* 440 Pa. at 318, 269 A.2d at 717. The Supreme Court therefore remanded the appeal to the Superior Court to determine which court of common pleas had jurisdiction to determine the superintendent's appeal.

The issue not decided in *Bowers,* nor in any other case so far as our research has disclosed, is whether the phrase "right to public office" means the right to *seek* public office or the right to *hold* public office. In *Bowers* the facts clearly demonstrate that the challenge pertained to the right to hold the office but *Bowers,* we think, must be read in light of the unusual procedural posture of that case and the dismissal action of the appointing authority under the Public School Code of 1949.[4] In *City Council of the City of Bethlehem v. Marcincin,* 512 Pa. 1, 515 A.2d 1320 (1986) and *Commonwealth ex rel. Waltman v. Graczyk,* 501 Pa. 244, 460 A.2d 1098 (1983), it was the right to *hold* public office that was at issue and in each case the challenge arose in the nature of a quo warranto action. Jurisdiction in both cases rested in the Supreme Court. Likewise, in *League of Women Voters of Lower Merion and Narberth v. Lower Merion Township Board of Commissioners,* 451 Pa. 26, 301 A.2d 797 (1973), where the proper parties refused to bring a quo warranto action, an equity challenge to a township commissioner's right to sit was held to be within the Supreme Court's exclusive jurisdiction under the right to public office language. *Accord Appeal of Yerger,* 460

4. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—26–2606–D.

Pa. 537, 333 A.2d 902 (1975) (losing candidate challenged failure to count write-in votes because if such votes were counted he would be entitled to office). *But see Curry v. Parkhouse*, 468 Pa. 542, 544 n. 1, 364 A.2d 326, 327 n. 1 (1976) (*winning* candidate brought suit *before outcome of election* challenging certain balloting provisions as unconstitutional and Supreme Court, while dismissing case as moot, noted that there had been no challenge to its jurisdiction and that case was "arguably" within its exclusive appellate jurisdiction).

We believe an important factor in determining whether an appeal quashing the right to *seek* public office is within the exclusive jurisdiction of the Supreme Court, under the phrase "right to public office," is this Court's exclusive appellate jurisdiction under Section 762(a)(3) of the Judicial Code, 42 Pa.C.S. § 762(a)(3), over appeals initially taken to the common pleas court under Section 933 of the Judicial Code, 42 Pa.C.S. § 933. Included in Section 933 is the right to appeal a determination of the Secretary of the Commonwealth under the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2601–3591. If the Commonwealth Court has appellate jurisdiction over election matters, then election cases where someone's right to *seek* an office is at issue must not fall within the ambit of the Supreme Court's exclusive appellate jurisdiction under the "right to public office" language or the Commonwealth Court's Election Code jurisdiction would be virtually nonexistent as a practical matter.

The Commonwealth Court also has appellate jurisdiction over cases where the application, interpretation or enforcement of a home rule charter is drawn into question. Section 762(a)(4)(i)(B) of the Judicial Code, 42 Pa.C.S. § 762(a)(4)(i)(B). In the instant case McMenamin alleges violations of both the Pennsylvania Election Code and the Philadelphia Home Rule Charter on the part of Castille and his challenges directly pertain to Castille's right to seek, not hold, the public office of Mayor. Accordingly, we conclude

that this appeal falls within our own appellate jurisdiction and we shall, therefore, deny the motion to quash.

Turning now to the merits, we begin by setting forth the relevant findings the trial court made:

1. From January, 1986 to March 12, 1991, Ronald D. Castille was the duly elected District Attorney of Philadelphia.

2. On March 12, 1991, Mr. Castille resigned from the Office of District Attorney and filed his nominating petitions for the Office of Mayor with the Philadelphia City Commissioners.

3. Prior to March 12, 1991, Mr. Castille and/or individuals acting on his behalf, engaged in discussions with individuals regarding their possible involvement in Mr. Castille's mayoral campaign.

4. Prior to March 12, 1991, Mr. Castille and/or individuals acting on his behalf planned and extended invitations to a cocktail party which took place on March 12, 1991, the purpose of which was to raise [funds] for Mr. Castille's mayoral campaign.

5. Mr. Castille and/or individuals acting on his behalf met with individuals over the past year to assess the availability of funds for Mr. Castille's mayoral campaign.

6. Mr. Castille met with William Meehan, general counsel for the Republican City Committee of Philadelphia, on February 12, 1991 in an attorney's office. During that meeting, Mr. Castille told Mr. Meehan that he would make himself available to be a mayoral candidate if he received the endorsement of the Republican Party.

7. Samuel P. Katz, a Republican candidate for Mayor, Mayer S. Kutler, Mr. Katz's campaign manager; Mr. Castille, Shanin Specter, currently Chairman of Mr. Castille's mayoral campaign; Charles G. Kopp; and David Girard DiCarlo met on February 12, 1991 in a private room at the Ritz Carlton Hotel in Philadelphia. At that meeting, Mr. Castille stated that the Republican Party was going to endorse him, and that he had decided to run for the Office of Mayor.

8. Mr. Castille met with the Republican Candidate Selection Committee and Republican ward leaders on February 13, 1991. At both meetings, Mr. Castille told the individuals assembled that he would be available in the future to accept their endorsement.

9. Members of the press were not permitted to attend Mr. Castille's meetings with the Republican Candidate Selection Committee and Republican Ward leaders on February 13, 1991.

10. Prior to March 12, 1991, Mr. Castille made numerous statements during press interviews with individual reporters, specifically Sal Paolantonio and Dave Davies, concerning his priorities and plans if he were to become Mayor; his qualifications to hold the Office of Mayor; and his plans to fund a mayoral campaign.

11. Mr. Castille prefaced his remarks to Mr. Paolantonio and Mr. Davies by saying that he was not speaking as a mayoral candidate.

12. The testimony of Elihu Greenhouse was offered by plaintiff's counsel to authenticate a videotape recording of remarks which Mr. Castille allegedly made to the press on February 13, 1991.

13. Mr. Greenhouse failed to testify that the videotape was an accurate reproduction of the events portrayed.

14. Mr. Greenhouse had not viewed the videotape prior to the hearing, and he did not do so at the hearing.

15. Mr. Greenhouse did not testify that he witnessed the events recorded on the videotape.

16. The videotape does not include the questions to which Mr. Castille was apparently responding.

17. Only a portion of the article written by Fred Paul Gusoff containing a statement attributed to Mr. Castille, and dated February 17, 1991 was produced at the hearing.

The trial court then concluded:

1. The District Attorney of Philadelphia is a city officer and, therefore, is bound by Section 10–107(5) of the Philadelphia Home Rule Charter.

2. As the District Attorney of Philadelphia, Ronald D. Castille was bound by Section 10–107(5) of the Philadelphia Home Rule Charter.

3. The videotape recording of remarks which Mr. Castille allegedly made to the press on February 13, 1991 was not properly authenticated at the hearing.

4. Ronald D. Castille became a candidate for the Office of Mayor after resigning from the Office of District Attorney, and upon filing his nominating petitions with the Philadelphia City Commissioners.

5. Ronald D. Castille did not violate Section 10–107(5) of the Philadelphia Home Rule Charter because he did not become a candidate for the Office of Mayor prior to his resignation from the Office of District Attorney on March 12, 1991.

The relevant provisions of Philadelphia's Home Rule Charter provide:

(3) No officer or employee of the City and no officer of any governmental agency whose compensation is paid from the City Treasury shall, from any person, and no officer or member of a committee of any political party or club shall, from any civil service employe, directly or indirectly demand, solicity [sic], collect or receive, or be in any manner concerned in demanding, soliciting, collecting or receiving, any assessment, subscription or contribution, whether voluntary or involuntary, for any political purpose whatever. No officer or member of the Philadelphia Police or the Fire Department shall pay or give any money or valuable thing or make any subscription or contribution, whether voluntary or involuntary, for any political purpose whatever.

. . . .

(5) No officer or employee of the City, except elected officers running for re-election, shall be a candidate for nomination or election to any public office unless he shall have first resigned from his then office or employment.

(6) Any officer or employee of the City who violates any of the foregoing provisions of this section shall, in addi-

tion to any penalties provided for hereafter, be ineligible for one year for any office or position under the City. 351 Pa.Code § 10.10–107(3), (5), (6) respectively. There is no dispute that Castille as District Attorney was a City officer until his resignation on March 12, 1991, and the trial court so determined.

On appeal McMenamin first maintains that Castille's nominating petition should be stricken because at the time Castille executed his candidate's affidavit declaring, *inter alia*, his eligibility for public office he was not in fact eligible under the Home Rule Charter due to the fact that he had not yet resigned from his position as District Attorney. He relies upon the case of *Petition of Cianfrani*, 467 Pa. 491, 359 A.2d 383 (1976). In that case the candidate filed a nominating petition for the office of member of the ward executive committee (committee person) of the Democratic Party for the 55th Ward, 7th Division, City of Philadelphia. He was not a registered voter at the time he took the candidate's affidavit and it is clear that he needed to be a registered Democrat in order to qualify for the post. He did, however, register before his nominating petitions were filed. The Supreme Court held that the candidate's affidavit "speaks from the moment the oath was administered." *Id.*, 467 Pa. at 494, 359 A.2d at 384. It, thus, concluded that the affidavit was false, the defect could not be cured by subsequent conduct and, the petition was void and invalid.

If *Cianfrani* were the only case dealing with this issue, we would have to conclude that Castille's petition is void. Since *Cianfrani* was decided, however, the Supreme Court has abrogated the harshness of its ruling. In *State Ethics Commission v. Baldwin*, 498 Pa. 255, 445 A.2d 1208 (1982), the State Ethics Commission challenged the nomination petitions of thirteen candidates on the basis of their failure to file financial interest statements as required by Section 4(b) of what is commonly referred to as the State Ethics Act, Act of October 4, 1978, P.L. 883, *as amended*, 65 P.S. § 404(b). This Section requires that financial interest statements be filed with the Commission on or before the last

day for filing nominating petitions. Our Court, relying on *Cianfrani*, held that the nominating petitions must be set aside. The Supreme Court reversed. It explained first that Section 4(b) is only a means used by the legislature to achieve a goal and not the goal itself. That goal of the State Ethics Act is to avoid conflicts of interest and reaffirm the citizens' confidence in the integrity of their public officials. Section 10.10–107 of the Home Rule Charter has a similar goal.

While we perceive that the broad goals of the City's Home Rule Charter are to avoid conflicts of interest and to reaffirm the citizens' confidence in the integrity of their public officials, the specific goals of Section 10 of the charter may be gleaned from a reference to, and study of, that chapter of the Charter itself and the official notes which are appended. Section 10.10–107(1)(2) provides:

(1) No person shall seek or attempt to use any political endorsement in connection with any appointment to a position in the civil service.

(2) No person shall, for the purpose of influencing the vote or political action of any person, or for any consideration, use or promise to use, directly or indirectly, any official authority or influence, whether possessed or anticipated, to secure or attempt to secure for any person an appointment or advantage in appointment to a position in the civil service, or an increase in pay or other advantage in employment in any such position.

351 Pa.Code § 10.10–107(1)(2). While the first and second subparagraphs, above quoted, specifically speak to gaining an unwarranted advantage within the ranks of the civil service corps, of notable and compelling significance are the stated purposes of all of the subparagraphs in Chapter 10 of the City's Charter (the others quoted previously) which are proclaimed as **PURPOSES** in the official notes appended to and following that chapter. These are the pertinent provisions:

**PURPOSES:** 1. Merit principles of governmental employment require the divorcement of politics from such

employment. They presuppose employment upon merit and not because of political connections, powers and pressures. They also presuppose that governmental employment will not serve as a means for political tribute to maintain political parties and regimes. The prohibitions of this section are intended to sustain these basic principles and precepts subject to certain qualifications which political necessities require to be made at certain levels of employment and office-holding. *Absolutism in this area is neither necessary nor practicable for the fact is that political parties are essential parts of the democratic form of government in the United States.* This section attempts to balance the public interest involved.

2. All City officers, elected or appointed, and all City employees, civil service or non-civil service, and all officers and all employees of governmental agencies compensated with City funds, such as County officers and employees, are prohibited from demanding, soliciting, collecting or receiving from any personal assessment, subscriptions or contributions for political purposes.

3. Members of a political party or clubs are prohibited from demanding, soliciting, collecting or receiving from any civil service employee such assessments, subscriptions or contributions. This prohibition does not apply to elected and appointed officers and non-civil service employees because political realism and democratic traditions require that a line be drawn here.

. . . .

5. Officers and employees, except officers running for re-election, must resign before becoming candidates for nomination or election to public office. *This requirement is imposed because an officer or employee who is a candidate for elective office is in a position to influence unduly and to intimidate employees under his supervision and because he may neglect his official duties in the interests of his candidacy.* (Emphasis added.)

The Supreme Court opined in *Baldwin:*

"To treat the affidavit attesting to financial disclosure as an appendage to the qualifications for office set forth in the Election Code creates a fiction that does a disservice to the legislative intention underlying the enactment of Section 4(b). Section 4(b) was not designed as positing a barrier to seeking public office, rather it was conceived as a way in which to obtain further information which could be available during the selection process."

*Id.*, 498 Pa. at 260, 445 A.2d at 1210. This statement, pertaining to the State Ethics Act, can apply with equal force to Section 10.10–107 of the City's Home Rule Charter. The *Baldwin* Court went on to state that our Court's reliance on *Cianfrani* was misplaced. It explained that in *Baldwin*, unlike *Cianfrani*, it was a legislative device outside the Election Code which had frustrated the candidates' attempts to run for office. And, finally, it observed that in *Baldwin*, unlike *Cianfrani*, there had been no deliberate intent to deceive. Justice (now Chief Justice) Nix opined, "while the *Cianfrani* ruling was required to deter deliberate attempts to frustrate the election process, there was no indication that the rationale of that decision should be applied where the misstatement was unintentional." *Id.*, 498 Pa. at 262, 445 A.2d at 1211.

In the instant case it is a body of law outside the Election Code which is being used to frustrate Castille's attempt to run for mayor and the trial court, as in *Baldwin*, did not find that Castille had deliberately acted to deceive the voters. Accordingly, we believe that *Baldwin* must control on this issue. Just as in *Baldwin* we look to the underlying purpose of the organic rule, and here speak to its fulfillment, that while "a machinelike rule that forecloses access to the nomination process whenever there is non-compliance with the strict letter of the section, regardless of the reason for the non-compliance, will assist in obtaining the desired"[5] result there is no evidence here that such a stringent approach is necessary because the candidate neither used his position "to influence unduly and to intimidate

5. *Id.*, 498 Pa. at 260, 445 A.2d at 1210.

employees under his supervision," nor did he "neglect his official duties in the interests of his candidacy." *See* Official notes to Philadelphia's Home Rule Charter, Chapter 10.

McMenamin further asserts that the nomination petition should be stricken because the signatures thereon were affixed before Castille became a candidate and while he was constitutionally barred from being one. We believe, however, that as to this challenge the legally significant date is not the date that an individual elector signed but the date the nominating petitions were filed, since, quite logically, if one is unable to obtain a sufficient number of signatures he might never bother to file the nominating petitions at all.

Next, McMenamin contends that the trial court committed error by not declaring Castille subject to the Home Rule Charter's penalty provision after finding that he had, while District Attorney, "actively engaged in fund raising activities on behalf of his mayoral campaign." Brief of McMenamin at p. 23. The only factual findings which pertain to alleged financial activities on the part of Castille are No. 4, which indicates only that a cocktail party was planned and that invitations were sent for the purpose of raising campaign funds, and No. 5, which indicates only that Castille met with certain persons "to assess the availability of funds" for his mayoral campaign. McMenamin does not point to any evidence in the record that Castille demanded, solicited or received a contribution or made any expenditure for his campaign prior to his resignation.[6] We are unpersuaded, as was the trial court, that a mere inquiry (even if posed at a cocktail party) as to whether certain

---

6. *See generally,* Section 1621 of the Pennsylvania Election Code, 25 P.S. § 3241. Section 1621 was added by Section 2 of the Act of October 4, 1978, P.L. 893. Under Section 1621 "candidate" is defined as "any individual who seeks nomination or election to public office...." One is deemed to be seeking nomination or election if he receives a contribution or makes an expenditure or consents for another to do so on his behalf if the contribution or expenditure is "for the purpose of influencing his nomination or election to such office." Alternatively, one is defined as a candidate if he has "[t]aken the action necessary under the laws of the Commonwealth to qualify himself for nomination or election to such office."

individuals would consider lending financial support to a campaign constitutes a violation of Section 10.10–107(3) of the Home Rule Charter.

■ McMenamin also insists that Castille, by his conduct, became a candidate within the meaning of Section 10.10–107(5) of the Home Rule Charter prior to his official resignation. The question of when one becomes a candidate for purposes of Section 10.10–107(5) was addressed by the Supreme Court in the case of *Mayer v. Hemphill*, 411 Pa. 1, 190 A.2d 444 (1963). There the Supreme Court opined that one becomes a candidate if he or she has filed nomination papers or publicly announced his candidacy for office. It is undisputed that Castille resigned his District Attorney position before filing his nomination papers. We must thus consider whether his pre-filing activities constituted an announcement of candidacy under the *Mayer* decision.

Under *Mayer* the announcement must be public. The trial court found that statements made by Castille to a limited number of individuals (five) in private in a hotel room without the presence of the media were not public under the *Mayer* case. We agree. As to the other conversations in which Castille or others acting at his behest took part, the trial court determined that they involved statements indicating only Castille's willingness and availability to run for Mayor. *Mayer* is clear that such statements do not constitute a present declaration of candidacy. Issues of witness credibility and evidentiary weight are within the exclusive province of the fact finder. *BJJ Enterprises, Inc. v. Commonwealth*, 85 Pa.Commonwealth Ct. 372, 481 A.2d 1253 (1984). Here the trial court merely exercised its authority in reviewing the evidence and making such determinations. The exercise of that authority does not constitute reversible error.

■ Finally, McMenamin takes issue with two of the trial court's evidentiary rulings. First, he contends that the court erred by admitting into evidence a videotape recording aired by WPVI–TV Channel 6 on February 13, 1991, and

then, in its written decision reversing its evidentiary ruling and disallowing the admission. The videotape purportedly contained statements of Castille made at a press conference after receiving the Republican City Nominating Committee and/or Republican Ward Leaders endorsements. According to McMenamin, the videotape shows that Castille had violated Section 10.10–107(5) of the Home Rule Charter. The court, however, admitted the videotape subject to authentication. As its findings show, it was not satisfied that sufficient authentication was provided so it declined to consider the evidence. The trial court's evidentiary rulings are within its discretion and will be reversed only if the record demonstrates an abuse of that discretion. *Henry v. McCrudden*, 133 Pa.Commonwealth Ct. 231, 575 A.2d 666 (1990). Even if, as McMenamin contends, he proved the elements necessary to have the videotape admitted under the Uniform Business Records as Evidence Act, *see* Section 6108(b) of the Judicial Code, 42 Pa.C.S. § 6108(b),[7] the trial court is still free to reject the evidence on credibility grounds. Here, the court emphasized that the authenticating witness had not seen the actual event. That being so, the trial court concluded that the witness had no ability to attest that the tape portrayed events accurately. Accordingly, any error in failing to admit the evidence unconditionally was harmless since the trial court rejected the videotape on credibility grounds as well.

Finally, McMenamin contends that a certain newspaper reporter should have been compelled to testify. His testimony was sought in order to bolster the videotape evidence that the trial court had conditionally admitted. The reporter was called for purposes of attesting to the accuracy of the statements made by Castille at a February

7. This Section provides:
   A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information method and time of preparation were such as to justify its admission.

13 press conference. The remarks sought to be proved were apparently the same in substance as those on the videotape.[8] The reporter asserted the privileges afforded him as a journalist. *See* Section 5942 of the Judicial Code, 42 Pa.C.S. § 5942, and the First Amendment to the United States Constitution. The trial court ruled that the reporter need not testify.

■ We agree that it was error for the trial court to preclude the testimony on the basis of Section 5942 of the Judicial Code as that statute clearly applies to a reporter protecting his "confidential sources." [9] The court also cited, however, to the First Amendment, which provides for, *inter alia*, freedom of the press. Under *Riley v. City of Chester*, 612 F.2d 708 (3d Cir.1979), a balancing test is established for balancing the rights of reporters under the First Amendment with those seeking the information the reporters possess. The reporter's privilege can be overridden when (1) the information sought is material, relevant, and necessary, (2) there is a strong showing that it cannot be obtained by alternative means and, (3) the information is crucial to the plaintiff's case. *Id.* at 716–17. While there appears to be no dispute that the information sought was material, relevant, necessary and perhaps crucial, there is nothing to show that McMenamin could not have obtained the information from other persons present at the February 13, 1991 press conference. Accordingly, we cannot conclude that the trial court committed error in upholding the reporter's privilege in this case.

**8.** The reporter had attributed to Castille certain quotes in his printed newspaper article.

**9.** Section 5942 pertinently states:

**Confidential communications to news reporters**

(a) **General rule.**—No person engaged on, connected with, or employed by any newspaper of general circulation or any press association or any radio or television station, or any magazine of general circulation, for the purpose of gathering, procuring, compiling, editing or publishing news, shall be required to disclose the source of any information procured or obtained by such person, in any legal proceeding, trial or investigation before any government unit.

Based upon the foregoing discussion, the order of the Court of Common Pleas of Philadelphia County is affirmed.

## ORDER

NOW, April 23, 1991, the motion to quash in the above-captioned matter is hereby denied. Further, the order of the Court of Common Pleas of Philadelphia County is affirmed.

KELLEY and BYER, JJ., did not participate in the decision in this case.