J-A16014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY MILLER | : | |
| | : | |
| Appellant | : | No. 1723 EDA 2021 |

Appeal from the PCRA Order Entered August 13, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009273-2012

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED OCTOBER 4, 2022**

Timothy Miller appeals the dismissal of his Post Conviction Relief Act ("PCRA") petition.[1] He alleges that the court erred in denying his petition without an evidentiary hearing. He also claims that the court erred in dismissing his petition because he raised meritorious claims of ineffective assistance of counsel and a violation of **_Brady v. Maryland_**, 373 U.S. 83 (1963). We affirm.

The facts giving rise to Miller's convictions are as follows:

> On May 18, 2012, robbery victim Naadirah Fate was working at the Zoo Hair Salon in Philadelphia. At around 2:45 p.m., she was alone in the shop with [Miller], who was assisting to clean up the shop. During this time, Fate

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

was having phone conversation with a man that sells cars. She told the car seller that she had $2000 to buy a car. [Miller] was the only other person in the salon at the time. After Fate had ended her phone conversation, [Miller] stated he knew someone who sold cars and left the shop, saying that he would be back in five minutes. About 15 minutes after [Miller] left, robbery victims Malisha Jessie and Robin Cousette entered the shop. Cousette was accompanied by her five-year-old son.

A few minutes later, the co-defendant Jovanna Johnson entered the salon. Johnson pulled a gun from her hoodie, "ordered everybody to slide their pocketbooks to the left…," and demanded their phones as well. Johnson also demanded to speak with the owner. Eventually robbery victim Fate called the owner and put Johnson on the phone to speak with her.

Approximately ten minutes after co-defendant Johnson entered the salon, [Miller] open the door for a moment and said "Let's go" to Johnson. At this point, Johnson still had her gun out and was collecting various items, including a purse from victim Jessie, a wallet from victim Cousette, and all three of the women's cellphones. Johnson then cocked her gun and pointed it towards victim Fate's left leg and demanded, "Where's the money?" and "I heard you trying to buy a car today, where's the money at."

Victim Fate stated she had hidden the money in her pants and co-defendant Johnson pulled at Fate's pants to see the bills. Johnson pulled the trigger while still pointing the gun at Fate's leg and the gun misfired. A struggled ensued, during which Johnson was able to seize Fate's $2000.

Co-defendant Johnson then left with [Miller], carrying the purse, cellphones, and $2000 cash. Victim Fate followed Johnson out of the salon and pursued both Johnson and [Miller] on foot. When Fate followed them into an alley, [Miller] pushed her to the ground. Fate was picked up by victim Jessie and together they continued their pursuit in a car. They followed Johnson and [Miller] to 5911 Irving Street where they saw Johnson and [Miller] enter the house.

At about 2:30 p.m. Philadelphia Police Office Damian Wyche was on routine patrol with his partner, Officer Clara

Martinez. The officers received a radio call for a "robbery in progress, a person with a gun." The officers arrived at the hair salon where victim Fate recounted the robbery. After describing the incident Fate led the officers to 5911 Irving Street. Officer Wyche went to the back of the property while Officer Martinez remained in the front.

Officer Wyche observed the co-defendant Johnson and [Miller] enter the backyard holding objects, one of which he believed to be a gun. When he called out to them, "Let me see your hands," they threw the objects into the next yard and retreated back to the house. Officer Martinez knocked on the front door and heard a commotion coming from inside the house. [Miller] opened the door "sweating profusely" and claimed nobody else was in the building. Officer Martinez did not believe [Miller] and handcuffed him before entering the building. The police discovered the co-defendant Johnson in the basement and arrested her.

Philadelphia Police recovered an iPhone, iPod, and a loaded firearm. Victim Fate identified the gun as the one used in the robbery. These were the same items that Officer Wyche had seen Ms. Johnson and [Miller] throw away into the neighboring yard.

Rule 1925(a) Opinion ("1925(a) Op."), filed 10/7/21, at 1-3 (record citations omitted).

A jury convicted Miller of robbery, conspiracy, and aggravated assault.[2] The court sentenced him to an aggregate term of 10 to 20 years' incarceration. We affirmed the judgment of sentence. ***See Commonwealth v. Miller***, 2019 WL 1224674 (Pa.Super. filed March 15, 2019).[3] Our

---

[2] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903(c), and 2702(a), respectively.

[3] Following a *pro se* PCRA petition filed by Miller, the court reinstated Miller's direct appeal rights *nunc pro tunc* on February 10, 2017.

Supreme Court denied allowance of appeal in August 2019. *Commonwealth v. Miller*, 217 A.3d 189 (Table) (Pa. filed Aug. 7, 2019).

On July 20, 2020, Miller filed the instant, timely PCRA petition. The court appointed counsel who filed an amended petition. *See* Amended PCRA Petition, filed 12/13/20. Miller raised an ineffectiveness claim and alleged a *Brady* violation. He claimed that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence as it related to his aggravated assault and robbery convictions. He also argued that appellate counsel was ineffective for failing to challenge the court's denial of his post-sentence motion and not raising a challenge to the weight of the evidence. Additionally, he maintained that appellate counsel was ineffective for not contesting the denial of his motions for a mistrial. Regarding the *Brady* violation, Miller claimed that the Commonwealth had withheld exculpatory evidence by playing only a small portion of a video, when, according to Miller, the full video would have shown that no conspiracy existed.

Following the Commonwealth's motion to dismiss the petition, the court issued notice of its intent to dismiss Miller's petition without a hearing. Miller did not respond to the court's notice, and the court dismissed the petition. This timely appeal followed.

Miller raises the following issues:

1. Whether the court erred in denying [Miller's] PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition regarding trial counsel's ineffectiveness.

2. Whether the PCRA court was in error in not granting relief on for the following reasons:

    a. Appellate counsel was ineffective for failing to properly appeal sufficiency of the evidence

    b. Appellate counsel was ineffective for failing to appeal the denial of the following post-sentence motions:

        i. Reconsideration of sentence

        ii. Weight of evidence

        iii. Three mistrial motions

    c. Commonwealth failed to disclose exculpatory material

Miller's Br. at 8 (answers of trial court omitted).

When a court dismisses a PCRA petition, we must determine whether the court's conclusions are supported by evidence of record and whether the court committed any legal error. *Commonwealth v. Phillips*, 31 A.3d 317, 319 (Pa.Super. 2011).

We will address Miller's second issue first as it is dispositive of our conclusion regarding his first issue. Miller claims that the court should have granted his petition because he raised valid claims of ineffective assistance of appellate counsel and a *Brady* violation by the Commonwealth.

**Ineffective Assistance of Counsel**

Counsel is presumed effective. *Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015). To overcome this presumption, a petitioner must plead and prove that: "(1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis

designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner." *Id.* Prejudice, in this context, means "that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different." *Id.* "Failure to establish any prong of the test will defeat an ineffectiveness claim." ***Commonwealth v. Walker***, 36 A.3d 1, 7 (Pa. 2011).

*Sufficiency of Evidence*

Miller claims that appellate counsel was ineffective for failing to properly present an argument regarding his sufficiency challenge to the robbery and aggravated assault convictions. He states that counsel failed to discuss the elements of the crimes, cite relevant case law, or reference the record, and did not otherwise develop any meaningful argument on this issue. Miller notes that this Court found that the sufficiency challenges to the robbery and aggravated assault convictions were waived. ***See*** Miller's Br. at 17-18 (citing ***Miller***, 2019 WL 1224674 at *4).

The PCRA court rejected this claim. It opined that Miller failed to show prejudice because the evidence at trial was sufficient to sustain the convictions. The court explained that a participant in a criminal conspiracy is criminally liable for crimes a co-conspirator commits in furtherance of the conspiracy. The court then explained that the evidence was sufficient to support the conspiracy conviction. It noted that Miller was in the salon when the victim told someone on the phone that she had $2,000, and after Miller left shortly thereafter, his co-defendant returned, saying, "I heard you trying

to buy a car today, where's the money at." It also noted that Miller later reentered the salon during the robbery and told his co-defendant, "Let's go." The court also pointed to Miller's concerted actions with his co-defendant. This included their flight from the scene and throwing items into a yard. These items included a victim's phone and the firearm that was used in the robbery.

We agree with the court's analysis. Miller's allegations were insufficient to plead prejudice. When there is a challenge to the sufficiency of the evidence, the court must view the evidence in the light most favorable to the Commonwealth, as verdict-winner, and make all reasonable inferences that arise from that evidence, in the Commonwealth's favor. **See Commonwealth v. Rushing**, 99 A.3d 416, 420-21 (Pa. 2014).

As Miller states, counsel did not adequately argue sufficiency for the robbery and aggravated assault convictions on appeal and therefore this Court concluded that he waived review of the issue. **See Miller**, 2019 WL 1224674 at *2 n.2. However, before the PCRA court and this Court, Miller failed to prove any prejudice from counsel's inactions. Miller fails to show that but for counsel's inaction, the outcome of his case, *i.e.*, this Court's affirmance of the judgment of sentence, would likely have been different. As the PCRA court explained, the evidence at trial was sufficient to establish Miller's guilt as a co-conspirator. Indeed, this Court stated on direct appeal that "[e]ven if [Miller's] sufficiency claim is not abandoned, he still is not

entitled to relief based on the reasons outlined in the trial court's November 30, 2017, opinion." *Id.* The court committed no error in rejecting this claim.

*Post-Sentence Motion*

Miller also claims that appellate counsel was ineffective for failing to raise on direct appeal the issues he argued in his post-sentence motion. Miller's post-sentence motion challenged the weight of the evidence and the discretionary aspects of his sentence. Regarding sentencing, Miller maintains that the court "did not state on the record any of the relevant sentencing factors required of a sentencing court when imposing a sentence." Miller's Br. at 18 (emphasis removed). He alleges that the sentence imposed by the court was harsh and unreasonable and a claim that the sentencing court failed to state adequate reasons for the sentence and imposed a "grossly disproportionate sentence" presents a substantial question. ***See*** Miller's Br. at 19 (citing ***Commonwealth v. Parlante***, 823 A.2d 927, 929 (Pa.Super. 2003). He thus claims that appellate counsel was ineffective in not raising a sentencing challenge on direct appeal.

In his post-sentence motion, Miller argued that the court imposed a manifestly unjust and excessive sentence and that it abused its discretion by imposing an excessive sentence. ***See*** Post-Sentence Motion, filed 3/24/15. He did not allege that the court failed to state adequate reasons for the sentence. Therefore, such a claim would not have been preserved for purposes of an appeal. ***See Commonwealth v. Heaster***, 171 A.3d 268, 272 (Pa.Super. 2017) (stating that challenge to discretionary aspects of

sentence is waived where appellant failed to preserve issue in post-sentence motion or at sentencing hearing).[4] Appellate counsel cannot be found ineffective for failing to raise this meritless claim. *See Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) ("counsel cannot be deemed ineffective for failing to raise a meritless claim"). Therefore, the court did not err in rejecting this claim of ineffectiveness because it lacks arguable merit.

Miller also argues that appellate counsel was ineffective for failing to raise his challenge to the weight of the evidence. He argues that the verdicts were against the weight of the evidence because the Commonwealth's witnesses made multiple inconsistent statements, no one corroborated the star witness's version of events, and the officer who observed Miller throw items into the yard had memory problems during his testimony. In addition, he points out that at the preliminary hearing, Fate testified that Miller's co-defendant took $1500 but, at trial she testified that the co-defendant took $2000.

The standard of review for a challenge to the weight of the evidence is an abuse of discretion. *See Commonwealth v. Rogers*, 259 A.3d 539, 541 (Pa.Super. 2021), *appeal denied*, No. 362 EAL 2021, 2022 WL 2233891 (Pa. June 22, 2022). A verdict is against the weight of the evidence when "certain

---

[4] *See also Commonwealth v. Ventura*, 975 A.2d 1128, 1133, 1135 (Pa.Super. 2009) (stating that claim that court failed to consider sentencing factors or state reasons for sentence on record challenges the discretionary aspects of sentence).

facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." ***Commonwealth v. Lyons***, 833 A.2d 245, 258 (Pa.Super. 2003) (citation omitted)***.*** As it relates to the credibility of witnesses and the weight of the evidence, the factfinder is free to believe all, part or none of the evidence. ***Commonwealth v. Antidormi***, 84 A.3d 736, 756, 758 (Pa.Super. 2014).

The PCRA court concluded that like his suffuciency claims, Miller failed to prove prejudice from appellate counsel's failure to challenge the weight of the evidence. The court stated that any discrepancies in the testimony of witnesses were not "so contradictory as to shock one's sense of justice." 1925(a) Opinion, at 12. The court stated that while the victim may have been inconsistent in the exact amount of money that was stolen from her, she led officers to the exact location where Miller and his co-defendant were found. It also pointed out that Miller failed to specify at what moments Officer Wyche had issues with his memory. The court stated that at times during the trial, the officer referred to his notes for specific details such as times and the address where Miller was found. The court stated "[g]iven the length of time between [Miller's] arrest and trial, it is not shocking that the officer needed to refresh his recollection regarding certain details." ***Id.*** at 13.

We discern no error in this regard. The PCRA court's conclusions are supported by the record, and we find no legal error in this analysis. Any inconsistencies in Fate's testimony would have gone to her credibility, which was in the jury's purview to determine and assess. ***See Commonwealth v.***

***DeJesus***, 860 A.2d 102, 107 (Pa. 2004). Likewise, Officer Wyche's momentary need to have his recollection refreshed go to his credibility. Miller has not shown such issues impact the weight of the evidence as to undermine confidence in the verdict.

*Denial of Motions for Mistrial*

Next, Miller claims that counsel was ineffective for failing to raise on appeal the court's denial of his motions for a mistrial. On three separate occasions, Miller moved for a mistrial. Miller first made such a motion when he argued that the Commonwealth did not authenticate the video recording of the robbery. ***See*** N.T., 10/22/14, at 42. The second motion occurred during Fate's cross-examination. Miller asked for a mistrial after the court interrupted the examination to instruct the jury regarding prior inconsistent statements. ***See*** N.T., 10/21/14, at 156-157. The final motion occurred during closing arguments when the Commonwealth stated that Miller was a "drug dealer" and commented that Miller had failed to call any witnesses on his behalf. The court denied each motion. ***See*** N.T., 10/22/14, at 139-140.

The grant or denial of a motion for a mistrial is within the discretion of the trial court. ***See Commonwealth v. Sanchez***, 907 A.2d 477, 491 (Pa. 2006). The court should "determine whether misconduct or prejudicial error actually occurred, and if so, [] assess the degree of any resulting prejudice." ***Id.*** Additionally, "[a] mistrial is not necessary where cautionary instructions are adequate to overcome prejudice." ***Commonwealth v. Goods***, 265 A.3d 662, 665 (Pa.Super. 2021) (citation omitted).

*Authentication*

Demonstrative evidence such as a surveillance video must be authenticated. **See Commonwealth v. McKellick**, 24 A.3d 982, 986, 987 (Pa.Super. 2011). Demonstrative evidence, such as a video recording, may be authenticated by the person who took the photograph or video, or by some other witness with sufficient knowledge to state that it fairly and accurately represents the object or place reproduced as it existed at the time of recording. **See id. at**, 986 (Pa.Super. 2011); **see also id.** at 995 (Donohue, J., dissenting, citing **Nyce v. Muffley**, 119 A.2d 530, 532 (Pa. 1956)).[5]

Here, as the trial court concluded, the video was properly authenticated by the testimony of the robbery victim, Fate. She testified to various parts of the surveillance video by identifying the scene as well as Miller, his co-defendant, and herself in the video. **See** N.T., 10/21/14, at 56-61. Thus, her testimony was sufficient to support a finding that the video was what the Commonwealth claimed it was. As such, the court did not err in denying counsel's motion for a mistrial because no misconduct or prejudicial error existed. Therefore, appellate counsel cannot be found

_____

[5] **See also Kopytin v. Aschinger**, 947 A.2d 739, 748 (Pa.Super. 2008) (finding video evidence insufficiently authenticated by testimony of person who had not seen the event recorded (citing **McMenamin v. Tartaglione**, 590 A.2d 802, 811 (Pa.Cmwlth. 1991), *aff'd*, 590 A.2d 753 (Pa. 1991)).

ineffective for not raising this issue on appeal. ***See Johnson***, 139 A.3d at 1272.

*Cross-Examination*

During the cross-examination of Fate, the following exchange occurred:

> Q [Defense Counsel]: And just so I'm clear, both on the day of this incident as well as any day previously, you didn't see this man, Mr. Miller, otherwise known as Blue, with a gun, did you?
>
> A [Fate]: No.
>
> Q: And on this day – and I'm talking about this day when this incident happened – you didn't see him on a cell phone, either inside or outside or anywhere around the salon, talking to anybody, did you?
>
> A: I didn't see him inside. I wasn't really outside.
>
> Q: Well, you didn't see him outside talking on a cell phone, did you?
>
> A: Nope.
>
> Q: And you didn't see him have any kind of conversation with this woman who came into the salon and robbed it, did you?
>
> A. Did not.
>
> Q. Turning your attention, once again, if you would, to your statement. You're familiar with what's in here, aren't you?
>
> A. Yes.
>
> Q: And when I say "familiar," you've read it over, I gather, at least once, if not more, since you gave it to the detective?
>
> A: Yes.

Q: So you know what's in there; right?

A: Yes.

Q: Did you ever anywhere in this statement –

THE COURT: No.

[Defense Counsel]: Judge, it's a permissible question.

N.T., 10/21/14, at 79-80. Following counsel's statement, the court went on to explain the permissible ways in which a witness can be confronted with a prior inconsistent statement. *See id.* at 80-83. The court ended its statement by stating, "So, no, that's not a proper way to ask a question. And I'm sure based on that five-minute diatribe, you will figure out a way to do it or move on to something else." *Id.* at 83.

Defense counsel moved for a mistrial based the court's comments. Counsel argued that he believed it was "inappropriate" and that he believed it "cast aspersions on my acting in an appropriate fashion in front of the jury[.]" *Id.* at 157. Counsel maintained that the correct way of proceeding would have been for the court to sustain an objection to the question. *See id.* The court explained that its statement was "an instruction on the law" and denied the motion. *Id.* at 156.

We discern no abuse of discretion by the trial court in denying counsel's motion for a mistrial and therefore conclude that any claim raised by appellate counsel on this issue would have been meritless. A review of the court's statements to the jury aligns with how the court characterized its actions. The statements of the court instructed the jury regarding prior

- 14 -

inconsistent statements and how they may be used against a witness. The court statements did not direct the jury in such a way that cast aspersions on counsel. Furthermore, as the court noted, "[I]t never berated counsel or called his character into question in front of the jury." 1925(a) Op. at 16. It is also notable that after the court's comments, counsel continued with his questioning of the victim with no further interruption from the court and counsel did in fact offer a prior inconsistent statement to impeach the witness. *See* N.T., 10/21/14, at 83-85, 85-86.

*Commonwealth's Closing Argument*

In the Commonwealth's closing argument, it made two separate statements that provoked Miller to move for a mistrial.

> Commonwealth: Do you know the song, I shot the sheriff but not the deputy? I sold drugs, but I didn't commit the robbery. Yes, you did, Mr. Miller. You sold drugs, **you're a drug dealer**, and you committed the robbery.
>
> And although the defendant has no burden and no obligation to call witnesses, in this case he did. He actually managed to find someone and bring them out of the wall from custody. **But he couldn't manage to find the person that was supposedly getting their hair done. You didn't hear from that person.**

N.T., 10/22/14, at 125, 127 (emphasis added).

Following the prosecutor's second comment, the court gave a cautionary instruction.

> As I explained at the beginning, the defendant has no burden. So the fact that he did not call some other witness, you can't hold that against him. Whatever he presented, he presented. And you evaluate that evidence

- 15 -

the same way you evaluate all of the other evidence in the case that's presented during the trial. But you can't hold it against him that there was possibly somebody else out there that he did not call to testify, so you should disregard that argument. And, Ms. Vedejs, you should move on to something else.

*Id.* at 127-128. The court did not address the prosecutor's comment that characterized Miller as a drug dealer and counsel did not make an argument regarding the comment, beyond saying it was part of his motion for a mistrial.

It is within the discretion of the trial court to grant or deny a mistrial for a prosecutor's comments. *See Commonwealth v. D'Ambro*, 456 A.2d 140, 144 (Pa. 1983). We review the court's ruling on such a claim for abuse of discretion. *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa.Super. 2005). A prosecutor's remarks do not constitute prosecutorial misconduct unless "their unavoidable effect" was to "prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Smith*, 985 A.2d 886, 907 (Pa. 2009) (quoting *Commonwealth v. Washington*, 700 A.2d 400, 407-408 (Pa. 1997)). A comment that might otherwise be misconduct is permissible if it is "merely responsive to actual evidence admitted during a trial." *Commonwealth v. Culver*, 51 A.3d 866, 876 (Pa.Super. 2012).

Here, the Commonwealth's first statement was made in reference to an exchange between Miller and the prosecutor during cross-examination. Miller admitted selling drugs and the prosecutor asked, "So you're a drug

dealer." N.T., 10/22/14, at 72. Miller responded, "No," but admitted that he had sold drugs. *See id.* Based on this exchange, the court determined that the prosecutor's closing argument "was predicated upon [Miller's] own testimony at trial and was entirely proper." 1925(a) Op. at 18.

We agree. The prosecutor's statements were responsive to Miller's testimony. Having failed to prove the merit of this claim, Miller's ineffectiveness claim fails.

For the remaining statement, the court concluded that it did not err in denying Miller's motion for a mistrial because it gave a curative instruction to the jury. Thus, the court stated that its "immediate instruction to the jury cured any possible prejudice incurred by the prosecutor's statement." 1925(a) Op. at 18. We again agree.

In its curative instruction to the jury, the court correctly informed the jury that Miller bore no burden to produce witnesses in his defense. It told the jury to disregard the statement and that it could not hold Miller's lack of producing a particular witness against him. We assume that the jury followed the instructions of the court. *See Commonwealth v. Baez*, 720 A.2d 711, 721 (Pa. 1998). As such, counsel would not have had a meritorious challenge to the court's denial of the motion. Miller's claim of ineffectiveness fails.

## *Brady* Violation

Miller also challenges the court's denial of his claim that the Commonwealth committed a *Brady* violation. He maintains that the

Commonwealth's failure to "disclose" the entire surveillance video violated *Brady*. Miller's Br. at 24.

To establish a *Brady* violation, the claimant must prove: "(1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." *Commonwealth v. Roney*, 79 A.3d 595, 607 (Pa. 2013) (citation omitted).

Here, the PCRA court determined that no *Brady* violation existed because the video was not suppressed. The court noted that though the Commonwealth played a portion of the video, defense counsel had access to the entire video. Therefore, the court determined that counsel could have played the entirety of the video at trial.

The court committed no error in its conclusion. A review of the record reveals that Miller was aware of and had access to the entire video. Miller does not claim otherwise but instead argues that the Commonwealth did not disclose the entirety of the video. This claim is not supported by the record. The record shows that the Commonwealth told the court that the full video was 12 minutes and the court informed Miller that in his case in chief he would have the opportunity to play the entire video. N.T., Trial, 10/22/14, at at 5, 7. Miller never claimed that he did not know that the complete video was 12 minutes or that he did not have access to the video. Moreover, in his case in chief, Miller did not present any part of the video. *Id.* at 98. Thus,

the Commonwealth did not commit any **Brady** violation because the video was not suppressed or kept from Miller.

We now turn to Miller's first issue. He claims that the court erred in denying his petition without an evidentiary hearing. Based on our discussion above, this claim is meritless.

"A PCRA petitioner is not entitled to an evidentiary hearing as a matter of right, but only where the petition presents genuine issues of material fact." **Commonwealth v. Walker**, 36 A.3d 1, 17 (Pa. 2011). It is within the court's discretion to grant or deny an evidentiary hearing. **See id.**

Miller claims that the "PCRA court erred by not granting an evidentiary hearing on the issues raised" in his PCRA petition. However, Miller has not identified any genuine issue of material fact. **Walker**, 36 A.3d at 17. Therefore, we find no error in the PCRA court's denial of Miller's request for an evidentiary hearing.

Order affirmed.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/4/2022

- 19 -