585 A.2d 559

Ira J. KORIN, Petitioner,

v.

**DEPARTMENT OF CORRECTIONS, STATE CORRECTIONAL INSTITUTION AT GRATERFORD, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 26, 1990.

Decided Jan. 3, 1991.

Petition for Allowance of Appeal Denied July 18, 1991.

Ronald F. Brien, Spring City, for petitioner.

Marcellus J. Matthews, Asst. Counsel, Camp Hill, for respondent.

Before DOYLE and BYER, JJ., and BARRY, Senior Judge.

DOYLE, Judge.

This is an appeal by Ira J. Korin (Appellant) from an order of the State Civil Service Commission (Commission) which upheld Korin's suspension from his position as a Corrections Officer II, with the State Department of Corrections, SCI–Graterford (Appointing Authority) for a period of thirty working days effective August 1, 1988, on charges of violating portions of the Appointing Authority's Code of Ethics.

The Commission found that at 4:00 p.m. on January 22, 1988, Korin received a call informing him that there was an inmate on E–Block smashing windows in his cell and threatening officers. Korin was directed to get other officers and

proceed to E–Block under the command of one Lieutenant Soler. Before Korin entered the cell block he saw the inmate standing in the cell yelling threats. The inmate's shirt was off, his body was oiled, crutch extensions were tied to his arms and boots were laced to his feet. The inmate's cellmate, who was in the rear of the cell, was frightened and wanted to be removed. Korin and others entered the cell at 4:15 p.m. The floor of the cell was covered with oil and broken glass. There was a struggle between the inmate and the officers and Korin received blows to the head and upper torso. Eventually, the inmate was restrained and brought from the cell with shirts wrapped around each of his arms and his hands cuffed behind his back. The escorting officers, one of whom was Korin, and the inmate proceeded down the corridor to the doorway outside the corridor. After they stepped into the corridor, their actions were recorded on videotape.

According to the Commission's findings, Korin saw another officer, Ricky Kinsworthy, lunge at the inmate. It also found that just prior to Kinsworthy's action, Korin ducked while holding the inmate's right arm. When the Appointing Authority later investigated this incident, Korin maintained that he had felt dizzy at the time and did not recall everything that occurred in the corridor. He further stated that he did not observe Kinsworthy strike the inmate.

The Appointing Authority did not believe Korin when he stated that he had not seen the assault by Kinsworthy and determined to charge Korin with violating the Appointing Authority's Code of Ethics which requires that employees promptly report to their supervisors any information which comes to their attention and indicates violation of the rules of the Appointing Authority and further requires that employees comply and cooperate with internal investigations. Specifically, Korin was charged with not reporting Kinsworthy's assault upon the inmate [1] and not responding truthfully to questions asked of him in regard to the January 22

---

1. The Appointing Authority's Code of Ethics prohibits an employee from assaulting an inmate for vengeful reasons.

incident. Korin's defense was that he had not seen Kinsworthy commit any assault upon the inmate.

The Commission admitted into evidence, over Korin's objection, a videotape of the inmate being led down the corridor and the resulting melee. Despite Korin's protestations that he had seen nothing with respect to the assault by Kinsworthy on the inmate, the Commission found credible the videotape which showed, *inter alia*, Korin "ducking" just before the assault upon the inmate occurred. The Commission rationalized that if Korin ducked it was because he saw the blow coming. It thus determined that his testimony was not credible and sustained the suspension.

■ On appeal Korin contends that the Appointing Authority did not meet its burden of proof to demonstrate good cause for the suspension. In order for good cause for a suspension to exist, the conduct for which discipline is imposed must be job related and touch in some logical and rational manner upon one's ability to do his job. *McCain v. Department of Education*, 71 Pa.Commonwealth Ct. 165, 454 A.2d 667 (1983). Our task is to review the evidence to determine if the Commission's necessary findings are supported by substantial evidence in the record. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Murphy v. Department of Public Welfare*, 85 Pa.Commonwealth Ct. 23, 480 A.2d 382 (1984).

■ The thrust of Korin's argument is that the videotape is insufficient to support the Commission's findings. First, the individual who videotaped the incident attested to the authenticity of the copy of the tape submitted into evidence. We believe that this witness' testimony was sufficient to permit the Commission to receive the tape into evidence and to accept a copy rather than the original.[2] We note that Korin does not claim that the tape appeared to be doctored or that it portrays the events inaccurately.

---

**2.** The witness' testimony revealed that the whereabouts of the original videotape was unknown because numerous copies had been made.

■ We have previously held that properly authenticated videotapes are admissible in evidence for the purpose of establishing facts, but are inadequate alone to sustain the evidentiary burden of showing that a workmen's compensation claimant's disability has been reduced. *Hartzell v. Workmen's Compensation Appeal Board (Bowen McLaughlin, York Division),* 101 Pa.Commonwealth Ct. 137, 515 A.2d 1009 (1986). By analogy, we believe that a properly authenticated videotape may be used in a civil service hearing to prove facts, such as here the employees' witnessing of the incident and the fact of the assault, but it is insufficient standing alone to establish the legal conclusion of "good cause" for the personnel action. It is acknowledged that there is no testimony by any witness that the assault occurred. The videotape, however, does provide substantial evidence that an assault occurred and that it happened in view of Korin. Further, there is corroborating evidence in the record. The Commission heard live testimony of witnesses as to the circumstances surrounding the assault, the positioning of the various officers, and the conduct of the inmate as he was being led down the corridor. We believe that this evidence, along with the videotape, is legally sufficient to support the Commission's findings.

We acknowledge that Korin has maintained that he was a diabetic and in a weakened state with a vision problem and that he simply did not see what occurred. The Commission, however, specifically found this evidence was not credible. It was within its province to do so. *Silvia v. Pennhurst Center,* 63 Pa.Commonwealth Ct. 75, 437 A.2d 535 (1981). Accordingly, having concluded that the Commission's necessary findings are supported by substantial evidence, we affirm its order.

## ORDER

NOW, January 3, 1991, the order of the State Civil Service Commission in the above-captioned matter is hereby affirmed.