**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Michael Timothy McKELLICK,**
**Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 26, 2010.

Filed June 20, 2011.

Robert A. Saurman, Stroudsburg, for appellant.

Bradley A. Schmidt, Assistant District Attorney, Stroudsburg, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, and DONOHUE, JJ.

OPINION BY STEVENS, J.:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Monroe County on March 4, 2010, at which time Appellant Michael Timothy McKellick (hereinafter "Appellant") was sentenced to seventy-two (72) hours to six (6) months in prison, fines and costs, a license suspension for a period of one year and a requirement to complete the Alcohol Highway Safety Program. Upon a review of the record, we affirm the judgment of sentence.

In her Opinion in Support of Order Pursuant to Pa.R.A.P. 1925(a), the learned trial judge Margherita Patti Worthington aptly set forth the relevant facts and procedural history of the within matter as follows:

This matter is before us on [Appellant's] appeal of his conviction for Driving Under the Influence of Alcohol–Highest Rate of Alcohol, 75 Pa.C.S.A. § 3802(c). On November 25, 2008, a Criminal Complaint was filed charging [Appellant] with one count each of the following crimes: Driving Under the Influence of Alcohol–General Impairment (75 Pa.C.S.A. § 3802(a)(1)); Driving Under the Influence of Alcohol–Highest Rate of Alcohol (75 Pa.C.S.A. § 3802(c)); Driving Without Valid License (75 Pa. C.S.A. § 1501(a)); Failure to Drive Within Single Lane of Traffic (75 Pa. C.S.A. § 3309(1)); Failure to Use Vehicle Restraint System (75 Pa.C.S.A. § 4581(a)(2)).

[Appellant] waived his preliminary hearing on April 8, 2009[,] and the charges were bound over to this [c]ourt. On June 2, 2009, [Appellant] waived formal arraignment, and a Criminal Information was filed on June 8, 2009[,] charging [Appellant] with Driving Under the Influence of Alcohol–General Impairment (75 Pa.C.S.A. § 3802(a)(1)), and Driving Under the Influence of Alcohol–Highest Rate of Alcohol (75 Pa. C.S.A. § 3802(c)). [Appellant] filed a timely Petition for Habeas Corpus Relief which was denied by this Court on December 14, 2009.[1]

After a bench trial held on February 8, 2010, [Appellant] was found guilty of Driving Under the Influence of Alcohol–Highest Rate of Alcohol (75 Pa.C.S.A. § 3802(c)) and not guilty of Driving Under the Influence of Alchohol–General Impairment (75 Pa.C.S.A. § 3802(a)(1)). [Appellant] was sentenced on March 4, 2010, to a period of 72 hours to six months['] incarceration, a $1250.00 fine, and costs. Additionally, [Appellant] was sentenced to complete the Alcohol Highway Safety Program and undergo a license suspension for a period of one year.

[Appellant] filed a timely appeal on April 1, 2010, and a 1925(b) Statement on April 27, 2010. [Appellant] contends that this [c]ourt erred in convicting him without allowing him the opportunity to confront the affiant and arresting officer, in violation of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 [158 L.Ed.2d 177] (2004); that the evidence presented was not sufficient to sustain a conviction of Driving Under the Influence; and that the recording on the dash-cam was not sufficient to identify [Appellant] for purposes of conviction.

The facts in this case are as follows:

At approximately 1:12 A.M., on or about November 12, 2008, Pennsylvania State Trooper Joshua Miller was travel-

ing south in a marked patrol vehicle on SR209. [Affidavit, 11/25/08] [2]. Trooper Miller observed a white Chevrolet Silverado in front of him sway slightly to the right side of the road, its passenger side tires crossing the white fog line. *Id.* Trooper Miller alleges that the Silverado then swerved sharply onto the right shoulder and came to a stop without using its turn signal. *Id.* When Trooper Miller approached the vehicle, he asked the driver, [Appellant] why he had swerved off the road. *Id.* [Appellant] replied that the truck had "stalled out." *Id.* [Appellant] produced a photo identification card, but was unable to provide Trooper Miller with the vehicle's registration and proof of financial responsibility, stating that the truck belonged to a friend. *Id.*

Trooper Miller alleged that he detected a strong odor of alcoholic beverage emanating from [Appellant] and noted that [Appellant's] eyes were "blood shot and glassy." *Id.* Trooper Miller asked [Appellant] how much he had to drink and [Appellant] replied that he had consumed two beers. *Id.* In response to a request by Trooper Miller, [Appellant] exited the vehicle, stumbling as he did so. *Id.* Trooper Miller then proceeded to conduct Standardized Field Sobriety Tests on [Appellant], to which he exhibited signs of intoxication. *Id.* A preliminary breathalyzer test indicated that [Appellant] had a blood alcohol content of 0.19% *Id.* Trooper Miller then placed [Appellant] under arrest and transported him to Pocono Medical Center where blood was drawn at 1:58 A.M. *Id.* A report received from Pocono Medical Center on November 17, 2008[,] indicat-

ed that [Appellant's] blood alcohol content at the time of testing was 0.23%. *Id.*

Following [Appellant's] arrest but prior to this matter proceeding to trial, Trooper Miller was tragically killed in the line of duty.[3] There are no surviving witnesses to the encounter between Trooper Miller and [Appellant] other than [Appellant] himself. However, Trooper Miller's patrol car was equipped with a dashboard-mounted video camera that activated when he turned on his emergency lights. Thus, the encounter between [Appellant] and Trooper Miller was visually recorded from the patrol vehicle's dashboard. The video depicts [Appellant] performing the field sobriety tests, but does not include audio. [Commonwealth's Exhibit 2].

[1] In the Omnibus Pretrial Hearing, President Judge Ronald E. Vican held that the Commonwealth had sufficiently authenticated the videotape through the testimony of Corporal Hothouse, and that the Commonwealth had presented enough evidence to establish a prima facie case of Driving Under the Influence of Alcohol–General Impairment (75 Pa.C.S.A. § 3802(a)(1)), and Driving Under the Influence of Alcohol–Highest Rate of Alcohol (75 Pa.C.S.A. § 3802(c)). In addition to the reasoning set forth in this Opinion, we incorporate President Judge Vican's holding and rationale.

[2] For the purposes of this Opinion, the one page Affidavit of Probable Cause filed by Pennsylvania State Trooper Joshua Miller on November 25, 2008[,] will be cited to as follows: [Affidavit, 11/25/08.].

[3] Pennsylvania State Trooper Joshua D. Miller was killed on June 7, 2009[,] in Coolbaugh township, Monroe County, Pennsylvania, while attempting to rescue a 9–year–old boy from a kidnapping suspect.

Trial Court Opinion, filed June 11, 2010, at 1–3.

In his brief,[1] Appellant presents the following Statement of Questions Presented:

1. We admonish Appellant that while his Summary of Argument spans four (4) pages, Pa. R.A.P. 2118 provides that it "should not exceed one page and should never exceed two pages."

A. Whether the trial court erred and abused its discretion in denying the Appellant the right to confront his accuser?

B. Whether the trial court erred and abused its discretion in that the evidence presented against him was not sufficient to sustain a conviction of driving under the influence?

C. Whether the trial court erred and abused its discretion in that the identification of [Appellant] was not sufficient to definitely ascertain his identity on the dash-cam of the state police vehicle for the purposes of conviction and all other evidence concerning his identity was hearsay which should not have been considered by the court?

Brief for Appellant at 14. We will consider these issues in turn.

 Admission of evidence is within the sound discretion of the trial court, and this Court will find the trial court abused its discretion only where it is revealed in the record that the court did not apply the law in reaching its judgment or exercised manifestly unreasonable judgment or judgment that is the result of partiality, prejudice, bias, or ill will. In addition, it is the exclusive province of the finder of fact to determine the weight of relevant evidence. *Commonwealth v. Mitchell*, 883 A.2d 1096, 1110–1111 (Pa.Super.2005) (citation omitted), *appeal denied*, 587 Pa. 688, 897 A.2d 454 (2006).

Whether a defendant has been denied his right to confront a witness is a question of law for which our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Atkinson*, 987 A.2d 743 (Pa.Super.2009). In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that the right of confrontation, when the government attempts to introduce **testimonial hearsay,** requires that the witness who made the statement be unavailable for trial and that the defendant had a prior opportunity to cross-examine that witness. *Crawford, supra.* Statements made during police interrogations are testimonial. *Id.* at 68, 124 S.Ct. 1354. In addition, a "prior opportunity to cross-examine" may be satisfied if there is an opportunity to cross-examine the witness at trial. *See Commonwealth v. Charlton*, 902 A.2d 554, 560 (Pa.Super.2006).

*Commonwealth v. Mollett*, 5 A.3d 291, 307 (Pa.Super.2010), appeal denied, —— Pa. ——, 14 A.3d 826 (Pa. Feb 2, 2011) (emphasis added).

There are three basic types of evidence that are admitted into court: (1) testimonial evidence; (2) documentary evidence; and (3) demonstrative evidence. 2 McCormick on Evidence § 212 (5th ed.1999). Presently, at issue is demonstrative evidence, which is "tendered for the purpose of rendering other evidence more comprehensible to the trier of fact." *Id.* As in the admission of any other evidence, a trial court may admit demonstrative evidence whose relevance outweighs any potential prejudicial effect. *Commonwealth v. Reid*, 571 Pa. 1, 811 A.2d 530, 552 (2002), *cert. denied*, 540 U.S. 850, 124 S.Ct. 131, 157 L.Ed.2d 92 (2003). The offering party must authenticate such evidence. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pa. R.E. 901(a). Demonstrative evidence may be authenticated by testimony from a witness who has knowledge "that a matter is what it is claimed to be." Pa. R.E. 901(b)(1). Demonstrative evidence

such as photographs, motion pictures, diagrams, and models have long been permitted to be entered into evidence provided that the demonstrative evidence fairly and accurately represents that which it purports to depict. *See Nyce v. Muffley*, 384 Pa. 107, 119 A.2d 530, 532 (1956).

The overriding principle in determining if any evidence, including demonstrative, should be admitted involves a weighing of the probative value versus prejudicial effect. We have held that the trial court must decide first if the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect. *Commonwealth v. Hawk*, 551 Pa. 71, 709 A.2d 373, 376 (1998). This Commonwealth defines relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa. R.E. 401. Relevant evidence may nevertheless be excluded "if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403.

*Commonwealth v. Serge*, 586 Pa. 671, 682–683, 896 A.2d 1170, 1177 (2006), *certiorari denied*, 549 U.S. 920, 127 S.Ct. 275, 166 L.Ed.2d 211 (2006).

In a case wherein only the audio portion of the videotape had been challenged, a panel of this Court determined that the verbalizations thereon were testimonial and compelled, thus violating the appellant's Fifth Amendment rights. Importantly, the panel did note that:

[t]he privilege against self-incrimination ordinarily presents no barrier to admission of demonstrative or physical evidence such as a *video* tape. A visual recording of a suspect's legally compelled actions, though perhaps highly incriminating, would not, in general, constitute communicative or testimonial evidence. It therefore would not be protected by the privilege against self-incrimination. *See Schmerber v. California*, 384 U.S. 757, 763–64, 86 S.Ct. 1826, 1831–32, 16 L.Ed.2d 908 (1966) (courts have usually held that the protection of the privilege does not extend to compulsory fingerprinting, photographs, measurements, writing or speaking for identification, appearing in court, assuming a particular stance, walking or making a particular gesture because the privilege is not violated by compulsion which makes a suspect the source of physical evidence).

*Commonwealth v. Conway*, 368 Pa.Super. 488, 534 A.2d 541, 544 n. 3 (1987), *appeal denied*, 520 Pa. 581, 549 A.2d 914 (1988) (italics in original).

Citing the Sixth Amendment of the United States Constitution and Article I § 9 of the Pennsylvania Constitution, along with cases interpreting the Sixth Amendment, and denying that he was, in fact, the individual depicted on the video tape, Appellant avers that had the videotape not been admitted into evidence, there would have been no admissible blood evidence, and, therefore, no conviction. Brief for Appellant at 23. Appellant reasons that as Trooper Miller obviously did not appear at trial or testify during the pendency of the case about the events of November 12, 2008, Appellant never had an opportunity to cross-examine him regarding those events. Appellant further asserts the testimony of Corporal Thomas Hothouse, who testified regarding the contents of the video, "demonstrates the need for witness confrontation and the damage that was done to the Appellant by its

denial to him" because the Corporal was not present at the scene and merely opines what he believes happened at that time. *Id.* at 24–25. Appellant also avers the videotape should not have been admitted into evidence at trial pursuant to Pa.R.E. 901.[2]

Appellant also relies upon *Melendez–Diaz v. Massachusetts*, —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) in support of his arguments. Therein, the Supreme Court held that the admission of certificates of analysis, which the prosecution had offered in a drug trial and indicated that the material seized by police and connected to the defendant was a quantity of cocaine, violated the defendant's Sixth Amendment right to confront the witnesses against him. Specifically, the Court found that the certificates of analysis were "quite plainly" affidavits and thus fell within the "core class of testimonial statements" covered by the Confrontation Clause. *Melendez–Diaz*, 129 S.Ct. at 2532 (internal citation omitted). The Court further found that, under *Crawford v. Washington, supra,* the analysts' affidavits were testimonial; thus, the analysts were witnesses for the purposes of the Sixth Amendment. *Melendez–Diaz*, 129 S.Ct. at 2532. Therefore, unless the analysts were unavailable to testify at trial and the defendant had been afforded a prior opportunity to cross-examine them, the Confrontation Clause required that he "be confronted with" the analysts at trial. *Id.* Indeed, the Court specifically stated that it "[did] not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in per-

son as part of the prosecution's case." *Melendez–Diaz*, 129 S.Ct. at 2532 n. 1. *See also U.S. v. Forstell*, 656 F.Supp.2d 578, 581 (E.D.Va.2009) citing *Larkin v. Yates*, 2009 WL 2049991, n. 2 (C.D.Cal.2009) (noting that *Melendez–Diaz* "explicitly rejected the suggestion that the Confrontation Clause required that every person whose testimony might be relevant to the authenticity of sample or accuracy of a testing device appear in person as part of the prosecution's case").

In the instant matter, Appellant acknowledges the videotape had no audio; thus, in light of *Serge,* and *Conway, supra,* it falls within the category of the non-testimonial exception carved out by the Supreme Court in *Crawford v. Washington, supra,* and, therefore, the Commonwealth was not required to present the testimony of Trooper Miller at trial in order for it to be admissible. Rather, demonstrative evidence may be authenticated by evidence sufficient to show that it is a fair and accurate representation of what it is purported to depict which includes "testimony from a witness who has knowledge 'that a matter is what it is claimed to be.' " *Serge, supra,* 896 A.2d at 1177 *citing* Pa.R.E 901(a) and Pa.R.E. 901(b)(1).

■ At trial, the Commonwealth called Corporal Donald Riehl of the Pennsylvania State Police to testify. Corporal Riehl explained that one of his duties was to act as the mobile video recording officer responsible for downloading videos from the video recording equipment in police vehicles onto disks when a trooper requests the video as a result of a traffic stop. N.T., 1/29/10, at 4–5. Corporal Riehl detailed the manner in which dash cams cap-

**2.** Pa.R.E. 901(a) **General provision** states that: "the requirement of authentication and identification as a condition precedent to admissibility is satisfied by evidence sufficient to

support a finding that the matter in question is what the proponent claims." Pa.R.E. 901(a).

ture footage and the way in which the standard mobile video recording download request form is filled out and utilized. *Id.* at 5–10. After Corporal Riehl prepared a video, his practice was to have the requesting trooper actually observe the prepared video prior to his securing it in the receiving locker in the evidence room. After the requesting trooper reviewed the disk for accuracy, Corporal Riehl would have him or her sign it in the section that he prepared, and then Corporal Riehl would add his signature underneath the trooper's. *Id.* at 12.

The videodisk shown at trial listed an incident number and Trooper Joshua Miller's name, indicated it was a DUI, and specified the location as State Route 209, north of State Route 402 and the date as November 12, 2008, at 0112 hours. *Id.* at 11. Corporal Riehl also noted that dash cams are set to automatically begin recording when the emergency lights are activated. *Id.* at 14.

Corporal Hothouse further testified that as a thirteen-year veteran of the Pennsylvania State Police he participated in more than 400 DUI arrests and served as a Pennsylvania State Police field sobriety test instructor; Appellant had no objection to his qualifications as an expert in this field. *Id.* at 15, 19. Corporal Hothouse explained that a camera had been mounted in Trooper Miller's vehicle, as is customary, and that the video introduced by the Commonwealth at trial had been taken on November 12, 2008, at 0157 hours. *Id.* at 19–20. Over Appellant's objection, Corporal Hothouse testified as to the contents of the video.[3] Specifically, Corporal Hothouse explained the video showed Trooper Miller pulling over behind a white Chevy Silverado with Pa. Registration plate "YPD7567" after which Appellant stepped out and into traffic. *Id.* at 25, 30. Though he admitted the person on the video resembled him, Appellant objected to Corporal Hothouse's identification of the individual on the video as Appellant. *Id.* at 26. Over Appellant's objection, Corporal Hothouse also described the various field sobriety tests Officer Miller had Appellant perform and the instructions the Officer was likely giving Appellant at the time. *Id.* at 27–29. The video played while the Corporal narrated which enabled the trial court to observe Appellant's performance on each of the field sobriety tests and to determine the accuracy of the Corporal's interpretation of the events unfolding on it.

In light of the aforementioned testimony, we find that the Commonwealth sufficiently authenticated the videotape. Corporals Riehl and Hothouse demonstrated they were persons with knowledge of what the evidence was proclaimed to be, Appellant's traffic stop, and the trial court, as the finder of fact, was free to believe or disbelieve Corporal Hothouse's depiction of the events thereon and whether the videotape accurately and fairly represented Trooper Miller's contact with Appellant on November 12, 2008. Furthermore, no-

---

**3.** Appellant objected to the admission of the videotape arguing it had not been properly authenticated and that based on Commonwealth's Exhibit 1, the time of the tape should be 0112 a.m., though the time of the tape was, in fact, 1:57, approximately forty-five minutes after the time indicated on the Commonwealth's exhibit. The Commonwealth explained that daylight savings time was to blame for the alleged discrepancy in the time on the tape and the time at which Appellant's blood was drawn which was indicated on the lab report as 1:57. *Id.* at 23–24. Neither Corporal Riehl nor Corporal Hothouse was aware of whether the time indicator on the video would have been adjusted for daylight savings time. *Id.* at 14, 25. Determining that Appellant's objection went to the weight the videotape would be given, the trial court overruled the objection. *Id.* at 25. We also note that the videotape at issue has not been provided for our review.

where does Appellant allege that the tape had been fabricated, altered or manipulated in any way. As such, we find the trial court did not err when relying upon *Conway, supra,* to determine that the videotape in this case did not implicate *Crawford v. Washington, supra,* and, therefore, that the introduction of the video at trial did not violate Appellant's confrontation rights. Trial Court Opinion, filed June 11, 2010, at 9.

■ Appellant next contends the evidence presented against him was not sufficient to sustain a conviction of Driving Under the Influence.

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence. Significantly, we may not substitute our judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed. So long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, his convictions will be upheld. Any doubt about the defendant's guilt is to be resolved by the fact

finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. DiPanfilo,* 993 A.2d 1262, 1264 (Pa.Super.2010).

Under 75 Pa.C.S.A. § 3802(c), "An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle."

In his Petition for Writ of *Habeas Corpus,* Appellant asserted that the Commonwealth had failed to establish a *prima facie* case for the DUI crimes with which he had been charged. Following a hearing, the suppression court, in an Opinion filed on December 14, 2009, determined that the Commonwealth had presented sufficient evidence to establish a *prima facie* case of Driving Under the Influence of Alcohol–Highest Rate of Alcohol 75 Pa. C.S.A. § 3802(c). Thus, Appellant's argument the trial court erred and abused its discretion in convicting him is moot in light of the fact that the existence of probable cause was established during Appellant's habeas corpus challenge.

Notwithstanding, we note that the trial court had the opportunity to view Appellant's behavior on the video tape during trial, and in his Affidavit of Probable Cause Trooper Miller indicated the events leading up to his stopping of Appellant and that Appellant's preliminary breathalyzer test ("PBT") indicated he had a blood alcohol content of 0.19%.[4] Furthermore, the

4. In his brief, Appellant maintains "[t]he allegations contained in the police report are inadmissible, and were not entered into evi-

dence by the Commonwealth at the trial of this matter." Brief for Appellant at 32. However, Appellant's failure to properly de-

Commonwealth introduced the testimony of Ms. Ildiko Sowinski, the phlebotomist who drew Appellant's blood at Pocono Medical Center. Ms. Sowinski testified regarding the chain of custody of the blood that she drew from Appellant at 1:58 a.m. on November 12, 2008, less than one hour after Appellant last operated his vehicle. She also explained that she had obtained Appellant's name, address and driver's license number from his driver's license. The blood alcohol content laboratory test performed at the Pocono Medical Center indicated his blood alcohol level was 0.23%. N.T. 1/29/10, at 44–46.

The Commonwealth also presented the testimony of Mr. Jason Perry, the chemist employed as the chemistry/ immunology supervisor at Pocono Medical Center to oversee the entire operation of chemistry and immunology at the hospital, which includes ethanol analysis. *Id.* at 48–49. Mr. Perry, who tested Appellant's blood sample, detailed the process he typically utilized in testing blood for the presence of alcohol and explained that he prepared documents to submit to the law enforcement agency in the within matter. *Id.* at 50–51. His testing revealed Appellant's blood alcohol content to be .23 percent. *Id.* at 52.

After viewing the video tape and listening to the testimony of officers and medical personnel, the trial court determined sufficient evidence had been presented to convict Appellant of 75 Pa.C.S.A.

§ 3802(c). Specifically, in its Opinion, the trial court stated the following:

> When the videotape is considered in conjunction with the other evidence presented by the Commonwealth, the evidence is enough to convict [Appellant] of Driving Under the Influence of Alcohol– Highest Rate of Alcohol (75 Pa.C.S.A. § 3802(c)). When viewed together, the testimony of Corporal Hothouse, Ms. Sowinski, and Mr. Perry, along with [Appellant's] blood alcohol, toxicology, and chemical laboratory report, demonstrates that [Appellant]: (1) consumed alcohol shortly before driving; (2) drove his truck on a public road; and (3) had a blood alcohol content of .23 percent within two hours of driving. The tape is therefore not the only evidence against [Appellant].
>
> We find that the contents of the videotape of the encounter between Trooper Miller and [Appellant] coupled with the results of the laboratory blood test provide ample evidence to support a conviction. We also find that the videotape of the incident was properly authenticated, and was properly introduced as evidence that established [Appellant's] identity.

Trial Court Opinion filed June 11, 2010, at 12–13. We find the trial court did not abuse its discretion making this finding, and therefore, this argument is without merit.

▬ Lastly, Appellant asserts the evidence presented at trial was insufficient to establish his identity. In support of this

velop this issue or cite to any legal authority to support it in his appellate brief renders this claim waived. *Commonwealth v. Williams*, 959 A.2d 1252, 1258 (Pa.Super.2008). Nevertheless, we note that specific evidentiary rules relate to the authentication of documentary evidence and while a document may be authenticated by direct evidence such as an admission, a document also may be authenticated through circumstantial evidence relat-

ing to a myriad of considerations including its appearance, contents, and substance. Moreover, acknowledged writings, public records, and under Pennsylvania Rule of Evidence 902, documents purporting to be issued by public authority, are self-authenticating and are admissible into evidence without further proof of genuineness. *Stotz v. Shields*, 696 A.2d 806, 809 (Pa.Super.1997) (citation omitted).

claim he argues Corporal Hothouse had no foundation in personal knowledge or experience from which to identify Appellant in court as the individual on the videotape obtained from Trooper Miller's dash cam and that he would have identified "[a]ny similar looking person sitting in [Appellant's] chair . . . based merely on his presence in the courtroom, because this was the only foundation that the Corporal had for making such identification." Brief for Appellant at 36. Appellant also asserts the Commonwealth's admission into evidence under the business record exception to the hearsay rule of a processing photo taken by Trooper Miller on the night of the arrest was also in error. Appellant opines a business record is not admissible as a hearsay exception in a criminal matter where it is used to prove an element of the offense and that it was not authenticated as per Pa.R.E. 901. Brief for Appellant at 36.

Appellant fails to mention in his brief that Ms. Sowinski testified that she obtained Appellant's name, address and license number from his driver's license, and that prior to drawing the blood from any individual she identifies the individual from his or her driver's license, the police officer and also asks the individual his or her name. N.T., 1/29/10, at 46. In addition, the trial court had the opportunity to discern the individual on the video and Appellant. As we discussed, *supra*, the finder of fact properly weighs and determines the credibility of witnesses. We find that considered in its totality, the evidence presented by the Commonwealth was sufficient for the trial court to identify Appellant.

Judgment of sentence affirmed.

DONOHUE, J. files a dissenting opinion.

## DISSENTING OPINION BY DONOHUE, J.:

The trial court found Appellant Michael Timothy McKellick ("McKellick") guilty of Driving Under the Influence—Highest Rate of Alcohol, 75 Pa.C.S.A. § 3802(c) ("DUI"), even though no witness at trial testified that McKellick was driving while intoxicated on the night of his arrest. Before the time of trial, Trooper Joshua D. Miller (the arresting officer) tragically died in the line of duty in another case. Trooper Miller was the only person with personal knowledge of the events leading to McKellick's arrest (other than McKellick himself), and thus the Commonwealth could not produce a witness at trial to establish the elements of proof required for a DUI conviction. Instead, the Commonwealth offered a video recording of a traffic stop taken by a dashboard-mounted video camera. In Trooper Miller's absence, however, no witness could provide the basic foundational testimony required to authenticate the videodisk to permit its admission into evidence, including that it fairly and accurately depicts the events occurring during the traffic stop.[1] With

---

1. The fundamental lack of admissible evidence in this case is highlighted by the Majority Opinion's summary of the facts on which McKellick's DUI conviction is based. The Majority quotes at length from the trial court's Rule 1925(a) written opinion, in which an affidavit of probable cause signed by Trooper Miller is cited 13 times as the sole source for the factual background provided. As a result of the obvious hearsay nature of this affidavit, at trial the Commonwealth did not attempt to offer it into evidence.

Similarly, the Commonwealth did not attempt to offer the police report filed by Trooper Miller. In this regard, I cannot agree with the substance of footnote 4 in the Majority's opinion for at least two reasons. First, because the Commonwealth made no attempt to introduce the police report into evidence at trial, there is no predicate for the Majority's

all due respect to the learned Majority, it affirmed the trial court's decision to admit the videodisk principally by ignoring long-established evidentiary rules regarding the authentication of video evidence. Because the videodisk was not properly authenticated in accordance with Pennsylvania law, I respectfully dissent.

The use of motion pictures and video recordings in Pennsylvania courtrooms is by no means a recent phenomenon. This Court affirmed the use of a "talking motion picture, or movietone" of a confession, upon proof of proper authentication, as far back as 1930. *Commonwealth v. Roller,* 100 Pa.Super. 125, 1930 WL 3698 at *1 (1930). Video images may serve as different types of evidence, depending upon their relationship to the case. For example, a video of a crime in progress, recorded by an eyewitness or a surveillance camera, may be admitted as substantive evidence of a defendant's guilt upon proper authentication. *See, e.g., Commonwealth v. Wyatt,* 455 Pa.Super. 404, 688 A.2d 710, 714 (1997), *appeal denied,* 548 Pa. 681, 699 A.2d 735 (1997); *Korin v. Department of Corrections, State Correctional Inst.,* 137 Pa.Cmwlth. 94, 585 A.2d 559, 561 (1991), *appeal denied,* 528 Pa. 615, 596 A.2d 160 (1991). On the other hand, a video re-creation of a crime, *e.g.,* a computer animation, if sufficiently faithful to other admitted evidence, may be illustrative of events that occurred at the scene and thus be admitted to assist jurors in understanding what happened. Bergman & Hollander, *Wharton's Criminal Evidence* § 16.23 (15th ed.1999). Video recordings have also been admitted into evidence, upon proper authentication, for the limited purpose of corroborating a police officer's description regarding events taking place at the scene depicted on the video. *See, e.g., Commonwealth v. Weaver,* 768 A.2d 331, 332 (Pa.Super.), *appeal denied,* 567 Pa. 741, 788 A.2d 376 (2001).

The Majority contends that the videodisk at issue here is "demonstrative evidence." Our Supreme Court has defined demonstrative evidence as evidence that is "tendered for the purpose of rendering other evidence more comprehensible for the trier of fact." *Commonwealth v. Serge,* 586 Pa. 671, 682, 896 A.2d 1170, 1177 (2006) (quoting Broun, Kenneth S., 2 *McCormick On Evidence* § 212 (5th ed.1999)), *cert. denied,* 549 U.S. 920, 127 S.Ct. 275, 166 L.Ed.2d 211 (2006). Demonstrative evidence is thus illustrative in nature, as it assists the trier of fact in better understanding other substantive evidence admitted at trial. For this reason, the videodisk at issue in this case cannot be demonstrative evidence—it cannot "render other evidence more comprehensible" because *there is no other evidence to establish what occurred in connection with the traffic stop.* If anything, the videodisk must be viewed as purported substantive evidence of McKellick's guilt.

Whether improperly described as demonstrative evidence, or as substantive evidence of McKellick's guilt, the videodisk here was not admissible at trial absent proper authentication under Pennsylvania law. *See Commonwealth v. Impellizzeri,*

contention that McKellick waived any arguments regarding the document's admissibility. Second, the Majority's suggestion that the police report is a self-authenticating document pursuant to Pennsylvania Rule of Evidence 902 lacks any basis in Pennsylvania law. I am unaware of any case in which a Pennsylvania appellate court has ruled that police reports are self-authenticating under Rule 902. Moreover, even if the police report in the present case were self-authenticating, the Commonwealth laid no foundation for its admissibility under a hearsay exception. Again, there was no attempt to introduce the police report into evidence at trial.

443 Pa.Super. 296, 661 A.2d 422, 428 (1995) ("[L]ike a photograph, a videotape must be authenticated."), *appeal denied,* 543 Pa. 725, 673 A.2d 332 (1996). The starting point for authentication is Rule 901(a), which provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pa.R.E. 901(a). Rule 901(b)(1) provides that one method of satisfying this requirement is through the testimony of a witness with knowledge that "a matter is what it is claimed to be." Pa.R.E. 901(b)(1).[2]

What proof is necessary to satisfy the requirement under Rule 901(a) that the matter in question "is what its proponent claims" depends upon the type of evidence at issue. For example, a signed document may be authenticated by, *inter alia,* testimony by the signer or someone who saw the author sign it, admission of authenticity by an adverse party, or other proof that the signature is in the author's handwriting. *See, e.g., Commonwealth v. Brooks,* 352 Pa.Super. 394, 508 A.2d 316, 318 (1986). Conversely, the authentication of real evidence (*i.e.,* items that played an actual and direct part in the events at issue, like a murder weapon) typically requires proof to support a finding that the item in question was likely to have been directly involved in the incident or transaction before the court. *See, e.g., Commonwealth v. Edwards,* 588 Pa. 151, 182, 903 A.2d 1139, 1156–57 (2006) ("[T]he Commonwealth need only lay a foundation that would justify an inference by the finder of

2. Pa.R.E. 901(b)(9) provides that authentication of evidence (including substantive evidence) may, in appropriate cases, be achieved upon presentation of "[e]vidence describing a process or system used to produce a result and showing that the process or system produces an accurate result." Pa.R.E. 901(b)(9). Appellate courts in other states have permitted the authentication of photographs and video recordings (typically from stationary surveillance cameras) under similar evidentiary rules upon adequate proof that (1) the photograph has not been altered in any significant respect, (2) the method by which the camera was activated, (3) evidence of the time interval between frames, if applicable, (4) evidence of the date the photographs were taken, (5) the chain of custody of the film after its removal from the camera, and (6) testimony of a competent witness who can explain what the photograph portrays even though he was not present when the photograph was taken. *See, e.g., State v. Pulphus,* 465 A.2d 153, 161 (R.I.1983) (collecting cases from other jurisdictions). In addition, a proper foundation in these cases has also required evidence that the images portrayed fairly and accurately the place in question (*e.g.,* the inside of a bank), and of the reliability of its production process. *Id.*

To my knowledge, no Pennsylvania appellate court has ruled on the applicability of Rule 901(b)(9) to authenticate photographs or video records. That issue is not presently before this Court, in part because the Commonwealth made no attempt to authenticate the videodisk under Rule 901(b)(9) so that it could be admitted as substantive evidence. Among other things, the Commonwealth offered no testimony regarding the range of the camera, its landscaping adjustment capability, its light sensitivity, and the basic reliability of the video production process, including whether or not the camera equipment was functioning properly on the night in question. In this regard, we note that the processing form submitted by Trooper Miller (Commonwealth Exhibit # 1) states that the traffic stop of McKellick was effectuated at 1:12 a.m. The time stamp on the videodisk (Commonwealth Exhibit # 2), however, indicates that the video began recording at 1:57 a.m., and the laboratory report on the blood tests (Commonwealth Exhibit # 6), provides that McKellick's blood was drawn for testing at 1:58 a.m. The Commonwealth's explanation for these discrepancies in its own evidence, namely that the video camera had not been adjusted for daylight savings time, is nonsensical at best, since daylight savings time always involves one hour adjustments and thus could never account for a 45 minute time difference.

fact of the likelihood that the weapon was used in the commission of the crime."), *cert. denied,* 549 U.S. 1344, 127 S.Ct. 2030, 167 L.Ed.2d 772 (2007).

To authenticate photographs, motion pictures, and video recordings, Pennsylvania courts have always and without exception held that the photograph or recording must be authenticated through testimony from a witness with personal knowledge who can testify that it "fairly and accurately represents that which it purports to depict." *See, e.g., Serge,* 586 Pa. at 682, 896 A.2d at 1177. In *Kopytin v. Aschinger,* 947 A.2d 739 (Pa.Super.2008), *appeal denied,* 600 Pa. 740, 964 A.2d 2 (2009), for example, this Court held that "[w]here, *e.g.,* motion pictures are concerned, the authentication must be sufficient to support a finding that" the exhibit "fairly and accurately represents that which it purports to depict." *Id.* at 747 (quoting Binder, David F., *Binder On Pennsylvania Evidence* § 9.01)(4th ed.2005); *see also Taylor v. Borough of Modena,* 370 Pa. 100, 102, 87 A.2d 195, 196 (1952) (authentication of photograph requires testimony that it "fairly and truthfully represents the object or place reproduced"); *Roller,* 1930 WL 3698 at *2 (movietone authenticated by "abundant evidence" that it "was a true portrayal of the actions and words of the defendant at the time it was taken"); *Commonwealth v. Schwartz,* 419 Pa.Super. 251, 615 A.2d 350, 357 (1992) (photographs must "accurately and fairly depict what they purport to show"), *appeal denied,* 535 Pa. 617, 629 A.2d 1379 (1993); *cf. Commonwealth v. Rosarius,* 771 A.2d 29, 32 (Pa.Super.2001) (photographs by defendant of officer's location not admitted into evidence where officer testified that they did not accurately depict the area where he was located).

Authentication testimony may be provided by the person who took the photograph or video, or by some other witness "with sufficient knowledge to state that it fairly and accurately represents the object or place reproduced as it existed at the time" of recording. *Nyce v. Muffley,* 384 Pa. 107, 111, 119 A.2d 530, 532 (1956); *see also Impellizzeri,* 661 A.2d at 428 ("[A] witness familiar with the subject matter can testify that the tape was an accurate and fair depiction of the events sought to be shown.") (citing *Commonwealth v. Hindi,* 429 Pa.Super. 169, 631 A.2d 1341, 1346 (1993)); *Aiello v. Southeastern Pennsylvania Transp. Authority,* 687 A.2d 399, 403 (Pa.Cmwlth.1997) (same), *appeal denied,* 554 Pa. 244, 720 A.2d 1050 (1998).

Pennsylvania appellate courts have not hesitated to reverse trial court decisions when sufficient authentication evidence is lacking. In our recent decision in *Kopytin,* for example, this Court reversed a trial court's decision to admit a videotape into evidence in the absence of any authenticating testimony that it constituted a fair and accurate representation of the events portrayed on the tape. In *Kopytin,* the appellant alleged that he sustained multiple severe painful injuries that interfered with his ability to work as a result of a vehicular collision caused by the appellee. The appellee retained the services of an investigative agency, which conducted surveillance on the appellant and shot videotape of him performing activities calling into question the severity of the appellant's injuries. On appeal, the appellant objected to the trial court's decision to admit the videotape into evidence because it was not properly authenticated. Specifically, the appellant contended that the two employees who had shot the video had left the agency and thus had not testified. The appellant further argued that the principal of the agency could not authenticate the videotape because he "was neither present at the taping nor had personal knowledge of the circumstances surrounding it," and

he was thus "unable to state that the tape was in fact a fair and accurate depiction of appellant at that time." *Kopytin,* 947 A.2d at 747. This Court agreed, concluding that the principal's testimony was insufficient authentication evidence "as it provides no demonstration of knowledge that 'a matter is what it is claimed to be.'" *Id.* (quoting Pa.R.E. 901(b)(1)).

In reaching our decision in *Kopytin,* we found illuminating the Commonwealth Court's reasoning in the case of *McMenamin v. Tartaglione,* 139 Pa.Cmwlth. 269, 590 A.2d 802 (1991), *affirmed,* 527 Pa. 286, 590 A.2d 753 (1991). In *McMenamin,* an elector filed a complaint in equity seeking a declaration that Ronald D. Castille [3] was ineligible to run for the office of mayor of Philadelphia. At trial, the trial court refused to admit into evidence a videotape of comments made by Castille at a press conference on the grounds that, *inter alia,* the witness called to authenticate the videotape had not actually seen the events recorded on the tape. The Commonwealth Court affirmed the ruling excluding the videotape, agreeing with the trial court that "the witness had no ability to attest that the tape portrayed events accurately." *Id.* at 811.

The lack of evidence to authenticate the videodisk is not a mere technicality. Pennsylvania appellate courts, including our Supreme Court, have long stressed the potential of captured visual images (including both photographs and video recordings) to mislead, rather than assist, a trier of fact:

A photograph is merely pictorial testimony. While it is properly assumed that the lens of a camera will not lie, the reliability of the resulting product, insofar as evidence in a factual controversy is concerned, depends on many factors which have little or nothing to do with the fidelity of the mechanical process which transfers a physical object from tangible reality to an intangible image on paper. Many questions must be answered before a photograph may be accepted as incontrovertible. When was the picture taken? Had the photographed objects been moved since the happening which is the subject of dispute? Who took the picture? At what angle was the shot made? It is common knowledge that a given condition may be so photographed from different angles as to produce conflicting views of the situation under the camera's lens.

*Heimbach v. Peltz,* 384 Pa. 308, 311–12, 121 A.2d 114, 116 (1956). In this regard, our Supreme Court emphasized the need for testimony from a witness regarding the accuracy of the photograph:

We are to remember, then, that a document purporting to be a map, picture, or diagram, is, for evidential purposes simply nothing, except so far as it has a human being's credit to support it. It is mere waste paper, a testimonial nonentity. It speaks to us no more than a stick or a stone. It can of itself tell us no more as to the existence of the thing portrayed upon it than can a tree or an ox. We must somehow put a testimonial human being behind it (as it were) before it can be treated as having any testimonial standing in court. It is somebody's testimony, or it is nothing.

*Id.* (quoting III *Wigmore On Evidence* § 790). In a subsequent case, *Commonwealth v. Newman,* 323 Pa.Super. 394, 470 A.2d 976 (1984), this Court recognized that

---

**3.** While he is presently the Chief Justice of the Pennsylvania Supreme Court, at the time of the dispute at issue in the case, Chief Justice Castille was the District Attorney for Philadelphia.

the same reliability issues exist for video recordings:

A videotape recording, although capable of a more sequential reproduction than a still photograph, is nevertheless subject to the same uncertainties that render photographic evidence fallible.

*Id.* at 979 (citing and quoting *Heimbach*). Among other things, testimony that a proffered video recording fairly and accurately depicts what it purports to depict provides assurance that the video has not been altered or changed in any way, and precludes the probative danger that the exhibit may mislead the trier of fact due to, *e.g.*, variations of scale, distortions of perspective, inadequate lighting, or failure to capture the entirety of the events depicted. Broun, Kenneth S., 2 *McCormick On Evidence* § 214 (6th ed.2006).

At trial in the case *sub judice*, no witness testified that the videodisk admitted into evidence as Commonwealth Exhibit # 2 constituted a fair and accurate depiction of the events occurring at the traffic stop in question. The two witnesses the Commonwealth called to testify, Corporal Riehl and Corporal Hothouse, were not at the scene of the traffic stop and thus had no personal knowledge of events on the night in question. Corporal Riehl could testify only that he followed departmental procedures in retrieving a videotape from Trooper Miller's vehicle and in transferring a portion of it to the videodisk marked as Commonwealth Exhibit # 2. N.T., 1/29/10, at 6–12. Corporal Riehl's involvement in processing the video recording for display in the courtroom did not qualify him to authenticate the videodisk in this case, just as the person developing film at the Ritz Camera store cannot authenticate the accuracy of images on photographs picked up by customers at the store.

Corporal Hothouse likewise had no personal knowledge of the traffic stop or the events that occurred in connection therewith. Instead, his testimony was of necessity limited only to his observations gleaned from watching the videodisk. The Majority's contention that a witness may authenticate a videodisk merely by watching it and then offering that it "is what it purports to be" is at best tautological and circular, as such testimony amounts to nothing more than "the video appears to show what it appears to show"—which is worthless for authentication purposes. Corporal Hothouse could not testify that the videodisk fairly and accurately depicts the events occurring during Trooper Miller's traffic stop, since he was not there and thus had no personal knowledge of those events. After viewing the videodisk, the most to which Corporal Hothouse could testify was that it appeared to be a video recording of a traffic stop. He could not testify that it accurately depicted the traffic stop of McKellick because he was not there and did not witness it. To the contrary, Corporal Hothouse admitted that he did not even know the exact location where the traffic stop occurred—offering only that it was "on 209 up in the Marshall Creek area." N.T., 1/29/10, at 38. He further acknowledged that he did not know whether the sobriety tests were administered on level ground or on a slanted grade. *Id.* ("some [portions of berm in that area] are slanted and some are level").

In conclusion, I recognize that Trooper Miller's tragic death in the line of duty may have resulted in an apparent benefit to McKellick. As is often said, however, "bad facts make bad law," and in my view the Majority's decision here to ignore fundamental principles of Pennsylvania evidence law to achieve a result that compensates for Trooper Miller's absence will most certainly have unintended conse-

quences. Nothing in the Majority's Opinion today limits the admission of unauthenticated video recordings to those situations in which the arresting officer is unavailable to testify, and thus in future criminal cases where video exists, there will be no requirement that arresting officers appear, testify, and/or respond to cross-examination. Moreover, the requirement of authentication is not limited to criminal cases, and thus the Majority's holding—namely, that a video recording may be admitted into evidence without any testimony that it fairly and accurately depicts the events at issue—will have wide application in many areas, including civil cases and administrative proceedings.

For the foregoing reasons, I believe that the Majority Opinion is a radical departure from established, tested and correct principles of the law of evidence in this Commonwealth. Thus, I dissent.