J-A23006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ERIC RATHMANN | : | |
| Appellant | : | No. 3257 EDA 2016 |

Appeal from the Judgment of Sentence September 23, 2016
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0004713-2015

BEFORE: PANELLA, J., DUBOW, J., and FITZGERALD*, J.

MEMORANDUM BY PANELLA, J.                    **FILED DECEMBER 01, 2017**

Appellant, Eric Rathmann, appeals from the judgment of sentence entered on September 23, 2016, in the Court of Common Pleas of Chester County. A video of Rathmann in his neighbor's bedroom, created on a motion-activated web camera, formed the basis for his convictions of burglary and criminal trespass. On appeal, he raises three evidentiary challenges. We affirm.

Rathmann resided at Summit House Condominiums in West Chester, Pennsylvania. Gregory Greenly lived in the residence next door. Summit House is a complex comprised of multi-floor adjoining residences. The neighbors' condominiums share an exterior fence on the ground level and share a partitioned balcony on the second floor. The partition is just three feet high. In Greenly's residence, a sliding glass door separates a bedroom from the balcony.

_____
* Former Justice specially assigned to the Superior Court.

In his bedroom, Greenly had a motion-activated web camera set on his computer. On November 5, 2015, the camera captured Rathmann, wearing a hoodie cinched close to his face, in Greenly's room. He had climbed over the partition and entered the residence through an unlocked sliding glass door. The bedroom contained items of value, golf clubs and a television, among other things, but Rathmann took no items from the residence. Based on the video, the police arrested Rathmann.

The matter proceeded to a jury trial. At trial, the Commonwealth offered two photographs into evidence, Commonwealth Exhibits 1 and 2, portraying two views of the outside of Greenly's and Rathmann's condominiums. Greenly answered "[y]es" when asked by the Commonwealth if the photographs "fairly and accurately show what those portions of your house looked like back in November of 2015?" *Id*., at 22.

Rathmann objected to the introduction of the photographs, arguing they were not properly authenticated as "[t]he photos clearly were taken in the summertime. There are leaves on the tress, the grass is green." N.T., Trial, 7/14/16, at 22. "[O]bviously," Rathmann maintained, "it … can't accurately reflect what it looked like in November of 2015." *Id*. The trial court overruled the objection, explaining the purpose of the photographs was "simply" to show "what type of apartment it is and the connection between the two apartments. The fact that the vegetation is different is not of a major concern here." *Id*., at 23.

Later in his testimony, the Commonwealth asked Greenly what he saw on the surveillance video.[1] Greenly responded that he "saw the defendant." *Id*., at 32. Rathmann objected to this line of questioning. At sidebar, he explained to the trial court that the video had not been properly authenticated pursuant to Rule 901(a) of the Pennsylvania Rules of Evidence. Rathmann noted the video is a digital copy from a computer and "there is [sic] numerous ways this video could have been manipulated before it was even turned over to the police." *Id*., at 33. The trial court ruled the testimony proper so long as "he can simply lay a little more foundation that this is the guy that took the video" and that he "didn't tamper with it at all…." *Id*., at 34. Greenly resumed his testimony. He methodically explained how the web camera video system worked, how it time-stamped the date, and that he did not alter or tamper with the footage when he made a copy for the police. *See id*., at 40-46.

At the conclusion of Greenly's testimony, the Commonwealth offered the video, marked as Commonwealth's Exhibit 7, into evidence. Rathmann lodged a further objection—"that it's not the best evidence under Rule 1002." *Id*., at 47. The trial court denied the objection. It then briefly instructed the jury that it was for them to weigh the evidence and not to

---

[1] The Commonwealth also played the video for the jury.

form any opinions on the case until they heard the entire case. *See id*., at 47-48. Rathmann lodged no objection to this instruction.[2]

Rathmann testified at trial. He admitted it was he in the video and in the still frame captures from the video; he admitted he climbed over the partition on the day in question; he admitted he entered the residence; he admitted he walked around Greenly's bedroom; and he admitted he had no permission to be in the bedroom. *See* N.T., Trial, 7/15/16, at 16-20. Although he admitted to *all that*, he also testified he had no memory of actually entering the bedroom and being there. The Commonwealth argued he was there with an intent to steal items of value. But Rathmann disagreed, countering he was in the bedroom out of "curiosity" about "[h]ow the house looked." *Id*., at 22.

The jury disbelieved Rathmann. They found him guilty of burglary and criminal trespass. The trial court later sentenced him to an aggregate term of six to twenty-three months' imprisonment. This timely appeal followed.

On appeal, Rathmann raises three issues alleging the trial court erred in admitting evidence.

> The admission or exclusion of evidence is within the sound
> discretion of the trial court, and in reviewing a challenge to the

---

[2] Rathmann takes issue with this eminently reasonable instruction on appeal. *See* Appellant's Brief, at 6. As he lodged no objection to this instruction at trial, we find this issue waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")

admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

**Commonwealth v. Lopez**, 57 A.3d 74, 81 (Pa. Super. 2012) (quotation marks and citation omitted).

Rathmann first claims the trial court erred in admitting Commonwealth Exhibits 1 and 2 without proper authentication. "The authenticating witness declared on direct examination that the photographs 'fairly and accurately showed what those portions of your house looked like _back in November of_ 2015.'" Appellant's Brief, at 17 (emphasis in original) (quoting N.T., Trial, 7/14/16, at 22). According to Rathmann, that statement was patently false as "the photographs did not accurately depict what the house looked like in the autumn or early winter, and that is what the Commonwealth specifically offered them to show…." **Id**. Candidly, this claim is absurd.

The photographs were demonstrative evidence. That is, "evidence … tendered for the purpose of rendering other evidence more comprehensible to the trier of fact." **Commonwealth v. McKellick**, 24 A.3d 982, 986 (Pa. Super. 2011) (citation omitted). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pa.R.E. 901(a). "Demonstrative evidence such as photographs, motion pictures, diagrams, and models have long been

permitted to be entered into evidence provided that the demonstrative evidence fairly and accurately represents that which it purports to depict." **McKellick**, 24 A.3d at 986-987 (citation omitted).

The Commonwealth used the photographs as demonstrative evidence to show what the residences looked like and their proximity to each other— not for what they looked like *at a particular time of year*. Foliage is irrelevant. The structures did not change. And Greenly testified the photographs fairly and accurately depict his residence. The trial court committed no error in admitting the photographs.

Rathmann next argues the trial court erred in admitting the testimony about the video as there was a failure of proper authentication. Video is also demonstrative evidence. "Videotape requires an authenticating witness who has seen the event or transaction and can testify to the accuracy of the portrayal." Hon. Daniel J. Anders, *Ohlbaum on the Pennsylvania Rules of Evidence*, § 901.08[5][e] Videotape (2016 ed.) (citation omitted). Simply put, as with the photographs, the video may be authenticated by testimony from a witness who has knowledge "that a matter is what it is claimed to be." Pa.R.E. 901(b)(1).

Here, that the video is an accurate depiction of Rathmann in Greenly's bedroom. And that is exactly what Greenly offered at trial. Greenly explained how the web camera system worked and that it took video of Rathmann in

his bedroom. *See* N.T., Trial, 7/14/16, at 40-46. Greenly properly authenticated the video before it was entered into evidence.

Even putting aside this legal reality and assuming the video was improperly authenticated, this error would be harmless. The conclusion of Rathmann's argument on this issue is that the video "served as the foundation upon which three witnesses, Gregory Greenly, Thomas Greenly and Detective Large, identified the person on the video." Appellant's Brief, at 23. *Rathmann* testified that on November 5, 2015, *he* climbed over the partition and entered Greenly's bedroom—and that *he* was the man in the *video*. *See* N.T., Trial, 7/15/16, at 20. Thus, he cannot now argue the identification derived from the video prejudiced him.

Lastly, Rathmann argues the trial court erred in admitting a copy of the digital video file from the computer's hard drive contained on a CD-R disk.[3] Rathmann asserts the Commonwealth was required, under Pa.R.E. 1002, to admit "the original video," which "was on the hard disk drive" of Greenly's computer. Appellant's Brief, at 24. Greenly made a copy of the

---

[3] A "CD-R (Compact Disc-Recordable) is a digital optical disc storage format. A CD-R disc is a compact disc that can be written once and read arbitrarily many times." *CD-R*, Wikipedia, available at https://en.wikipedia.org/wiki/CD-R (last visited November 3, 2017).

video file onto a thumb drive,[4] which the police then copied onto a CD-R disc.

Rule 1002 "corresponds to the common law 'best evidence rule,'" Pa.R.E. 1002 *Comment*, and provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." "The best evidence rule applies where the contents of the item in question must be proven to make a case." **Commonwealth v. Janda**, 14 A.3d 147, 161-162 (Pa. Super. 2011) (citation omitted). That is clearly the case here.

"Original" is defined, in pertinent part, as follows: "For electronically stored information, 'original' means any printout--or other output readable by sight--if it accurately reflects the information." Pa.R.E. 1001(d). **See also** Hon. Daniel J. Anders, *Ohlbaum on the Pennsylvania Rules of* Evidence, § 1001.09 Computer Data (2016 ed.) ("If data are stored in a computer or

---

[4] "A USB flash drive, also variously known as a … thumb drive … is a data storage device that includes flash memory with an integrated USB interface." *USB flash drive*, Wikipedia, available at https://en.wikipedia.org/wiki/USB_flash_drive (last visited November 3, 2017). What is USB? We have the answer: "USB, short for Universal Serial Bus, is an industry standard that defines cables, connectors and communications protocols for connection, communication, and power supply between computers and devices." *USB*, Wikipedia, available at https://en.wikipedia.org/wiki/USB (last visited November 3, 2017).

similar device, any print out or other output that accurately reflects the data is an 'original' under Rule 1001(3).")

It is the definition of "original" that defeats Rathmann's claim. The digital video file on the CD-R disc was played for the jury. And Greenly testified the video was an accurate portrayal of his bedroom and that Rathmann was the individual in the video. Indeed, as mentioned, even Rathmann corroborated Greenly's testimony by identifying *himself* on the video in Greenly's bedroom.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/1/2017