J. A20035/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                :         PENNSYLVANIA
           v.             :
                                  :
FRANKLYN RAFAEL TABAREZ,     :       No. 1392 MDA 2016
                                  :
         Appellant      :

Appeal from the Judgment of Sentence, June 29, 2016,
in the Court of Common Pleas of Dauphin County
Criminal Division at No. CP-22-CR-0005664-2014

BEFORE:  GANTMAN, P.J., PANELLA, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED JANUARY 11, 2018**

Franklin Rafael Tabarez appeals from the June 29, 2016 aggregate

judgment of sentence of 4 to 8 years' imprisonment imposed after a jury

found him guilty of two counts of aggravated assault by physical menace.[1]

After careful review, we affirm the judgment of sentence.

The trial court summarized the relevant facts of this case as follows:

> On August 15, 2014, Special Agent Blake Cook
> of the Department of Homeland Security, along with
> three other agents, contacted [appellant] at his
> residence in Harrisburg.   [Appellant] reluctantly
> complied with Agent Cook's request to speak with
> him.   Agent Cook identified himself and told
> [appellant] that he was seeking information related
> to a criminal investigation.  Agent Cook observed a
> black semi-automatic handgun on a mattress near
> where he and [appellant] conversed.  Agent Cook
> spoke about the details of the investigation, gave

---

[1] 18 Pa.C.S.A. § 2702(a)(6).

[appellant] his business card, and told [appellant] to call if he was willing to assist.

Less than two weeks later, in the late afternoon hours of August 27, 2014, Dauphin County Probation Services officers ("P.O.[]s["]) Daniel Kinsinger and Daril Foose were on duty in Harrisburg conducting home visits and looking for offenders on the street. The probation officers wore uniforms which included a shirt with the word "Probation" on the back and drove a vehicle with an antenna on the trunk.

P.O.s Kinsinger and Foose first encountered [appellant] at around dusk when they observed a black pickup truck traveling north on Hummel Street in front of their vehicle. The black truck stopped, at which point a person approached the black truck, spoke to [appellant,] then returned to their [sic] porch. Kinsinger and Foose had no official interest in the black truck at that time. They continued on their planned route northbound on Hummel Street, across Derry Street and toward Chestnut Street, where they intended to visit probation clients.

As they drove eastbound on Chestnut Street, Kinsinger and Foose observed the black truck pull into an alley and wait for their vehicle to pass. The black truck then pulled out and drove behind them. Because P.O. Kinsinger thought this unusual, he pulled to the side of the road to determine what action the truck would take. [Appellant] followed them. Kinsinger resumed his route eastbound. [Appellant] again followed, at a distance of approximately half a block. The officers turned south onto 13th Street then east on Derry Street. [Appellant] continued to follow. At 14th and Derry Streets, [appellant] drove close behind the officers, flashed the lights on his vehicle and honked the horn. Uncertain as to why the driver would act in this manner, P.O. Kinsinger turned onto a one-way street. [Appellant] continued to follow at a distance of less than one half a block. P.O. Kinsinger turned west onto Mayflower Street. [Appellant] stopped his

vehicle facing northbound. It appeared to P.O. Foose that [appellant] was attempting to pin the officers' vehicle. The officers heard a loud pop which they recognized as a gunshot.

P.O. Kinsinger notified Dauphin County Dispatch that they were being fired upon. As P.O. Kinsinger proceeded west, then south, [appellant]'s vehicle approached at a high rate of speed. P.O. Kinsinger turned eastbound onto Vernon Street, where [appellant] fired another gunshot. Kinsinger drove faster in an attempt to get away from [appellant], maintaining contact with County Dispatch as to their location. [Appellant]'s vehicle nearly struck theirs. [Appellant] drove close to the bumper of the officers' vehicle at approximately 40 miles per hour. [Appellant]'s vehicle nearly struck the P.O.'s vehicle a second time at 17th and Vernon Streets. Kinsinger passed other vehicles in an attempt to evade [appellant]. They were able to lose [appellant] when he stopped at a traffic light.

Harrisburg City Police Officer Scott Johnson was working approximately one block away when he heard a radio call of shots fired upon [probation] officers. He proceeded to the area with his patrol vehicle lights and siren engaged. As he neared the intersection of 17th and Derry Streets, Officer Johnson saw two vehicles proceed through a red light. [Appellant]'s vehicle stopped at the next intersection at which point Officer Johnson stopped, exited his patrol vehicle with his gun drawn and ordered [appellant] out of the vehicle.

Harrisburg Police Officer Jon Fustine arrived within moments of the stop. Officer Fustine observed a black handgun tucked into the passenger seat of [appellant]'s vehicle.

Harrisburg Police Officer Michael Maurer responded to the scene to collect evidence. Officer Maurer photographed the vehicles and recovered two 40-caliber S&W cartridge cases in the areas of North 15th Street and Mayflower Streets and

South 14th and Vernon Streets. He collected a semiautomatic pistol tucked into the passenger seat.

When the [probation] officers learned that police had detained the driver of the black truck, they returned to the intersection of 17th and Berryhill Streets, where they saw the vehicle and [appellant].

P.O. Kinsinger testified that hearing the gunshots and nearly being struck by [appellant]'s much larger vehicle caused him to fear for his life and that of his partner.

P.O. Foose testified that the flashing lights, beeping and aggressive following made her extremely nervous. She feared for her life when she heard gunshots and vividly recalls the smell of gun powder. Officer Foose believed [appellant] intended to harm them.

[Appellant] testified that he honked and flashed his lights so that the people in the vehicle would identify themselves because he "wanted to know who those people were". [Appellant] admitted that he fired two shots.

Trial court opinion, 1/6/17 at 2-5 (citations to notes of testimony and footnotes omitted).

Appellant was arrested in connection with this incident and proceeded to a jury trial on May 16, 2016. Following a two-day trial, appellant was found guilty of two counts of aggravated assault by physical menace on May 17, 2016. The jury acquitted appellant of four counts of aggravated assault and two counts of assault of a law enforcement officer.[2] As noted, appellant was sentenced to an aggregate term of 4 to 8 years' imprisonment

---

[2] 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(2), and 2702.1(a), respectively.

on June 29, 2016. On July 11, 2016, appellant filed a timely post-sentence motion to modify his sentence, which was denied by the trial court on July 18, 2016. This timely appeal followed on August 16, 2016. On August 19, 2016, the trial court ordered appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). Appellant was subsequently granted an extension by the trial court and filed a timely Rule 1925(b) statement on September 29, 2016. The trial court filed its Rule 1925(a) opinion on January 6, 2017.

Appellant raises the following issues for our review:

I. DID NOT THE [TRIAL] COURT ERR IN OVERRULING [APPELLANT'S] OBJECTION TO THE ADMISSION OF THE COMMONWEALTH'S CRIME-SCENE DIAGRAM WHEN THE EXHIBIT WAS NOT AUTHENTICATED FOR FAIRNESS AND ACCURACY UNDER PA.R.E. 901 AND WHEN THE EXHIBIT INCLUDED AN UNNECESSARY AND PREJUDICIAL TITLE REFERRING TO THE CHARGED CRIMINAL ACT?

II. WAS NOT [APPELLANT] DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN THE [TRIAL] COURT, OVER [APPELLANT'S] OBJECTION, PERMITTED A LARGE NUMBER OF UNIFORMED POLICE OFFICERS AND PAROLE OFFICERS TO REMAIN IN THE COURTROOM?

III. DID NOT THE [TRIAL] COURT ERR IN DENYING [APPELLANT'S] OBJECTION TO THE DISTRICT ATTORNEY'S INADMISSIBLE, BUT AUDIBLE, SIDE-BAR COMMENTS REFERRING TO A CRIMINAL ARREST OF [APPELLANT] THAT DID NOT LEAD TO A CONVICTION?

IV. DID NOT THE [TRIAL] COURT ERR IN PERMITTING THE COMMONWEALTH OVER [APPELLANT'S] OBJECTION TO QUESTION [APPELLANT] REGARDING HIS BEING THE SUBJECT OF A FEDERAL CRIMINAL INVESTIGATION WHEN SUCH EVIDENCE WAS IRRELEVANT AND DID NOT QUALIFY UNDER THE EXCEPTIONS FOR "PRIOR BAD ACT" EVIDENCE AS SET FORTH AT PA.R.E. 404(b)?

V. DID NOT THE [TRIAL] COURT ERR IN PERMITTING THE COMMONWEALTH OVER [APPELLANT'S] OBJECTION TO QUESTION [APPELLANT] REGARDING HIS BEING A FOREIGN NATIONAL WHEN SUCH EVIDENCE WAS IRRELEVANT UNDER PA.R.E. 401 AND 402 AND OTHERWISE INADMISSIBLE UNDER PA.R.E. 403?

Appellant's brief at 6-7 (capitalization in original). For the ease of our discussion, we elect to address appellant's claims in a slightly different order than presented in his appellate brief.

We begin by addressing appellant's claim that his right to a fair trial was violated "when the [trial] court, over [appellant's] objection, permitted a large number of uniformed police officers and parole officers to remain in the courtroom" during the second day of the trial. (***Id.*** at 36.) For the following reasons, we disagree.

The record reflects that at the close of the Commonwealth's case, appellant's counsel objected to the presence of "at least a dozen" uniformed police officers in the courtroom on the grounds that they unfairly prejudiced appellant:

- 6 -

> [Appellant's counsel]: Judge, I do have to say one thing on the record. I just have to put it on the record. We have a large presence of police officers in the courtroom in full uniform. It looks like full street riot uniform to me, the lay observer.

Notes of testimony, 5/16-17/17 at 98. The trial court overruled appellant's objection, noting as follows:

> THE COURT: That's not riot uniform. That's the regular uniform of our police department. Unfortunately[,] they have to wear the bulletproof vests because of what we live with in this community.
>
> . . . .
>
> THE COURT: I see no harm. Some of them are probation officers, by the way. They're here watching the trial, I'm sure for the same reasons. It's one or two of their brothers that they believe were placed in danger. That's why they're here.

*Id.* at 98-99.

Upon review, we discern no abuse of discretion on the part of the trial court in overruling appellant's objection to the presence of police officers in the courtroom. Our supreme court addressed a similar issue in **Commonwealth v. Gibson**, 951 A.2d 1110 (Pa. 2008). **Gibson** involved a defendant who was convicted of first-degree murder where multiple police officers were present at his trial. In **Gibson**, the defendant argued that his trial counsel was ineffective for not objecting to this police presence in the courtroom and that his rights to a fair trial were violated pursuant to principles articulated by the United States Supreme Court in **Holbrook v.**

*Flynn*, 475 U.S. 560 (1986).[3] In rejecting this argument, the *Gibson* court held that "where the record does not indicate the number of uniformed officers present or any disturbance caused thereby, we conclude . . . [a defendant] cannot demonstrate that an unacceptable risk of the jury considering impermissible factors was created." *Gibson*, 951 A.2d at 1139 (citations omitted).[4]

Similarly, we acknowledge that although the presence of multiple uniformed police officers at a jury trial may cause concern with regard to jurors' perceptions and courtroom atmosphere, the record does not indicate that the officers in this instance caused even the slightest disturbance.

---

[3] *Holbrook* involved a situation where four uniformed police officers were present in the first row of a courtroom at the request of the trial court to provide security, and defendant Flynn subsequently challenged their presence as inherently prejudicial. *Holbrook*, 475 U.S. at 562-563. The *Holbrook* Court ultimately concluded that Flynn was unable to show he was denied a fair trial and that there was sufficient cause for this police presence because there was a state interest in maintaining courtroom security, offsetting any minor prejudice Flynn may have suffered. *Id.* at 572. In reaching this decision, however, the *Holbrook* Court cautioned that courts should "not minimize the threat that a roomful of uniformed and armed policemen might pose to a defendant's chances of receiving a fair trial." *Id.* at 570.

[4] We note that on August 8, 2017, appellant filed motions requesting a remand for an evidentiary hearing and a continuance to accommodate the remand. These motions pointed out that the transcript did not indicate that during trial, the trial court directed a number of appellant's supporters who were present in the courtroom to turn their supportive t-shirts inside out. (*See* "Application to Remand to Conduct Evidentiary Hearing for Purposes of Modifying or Correcting Record," 8/8/17 at 3, ¶¶ 5-6.) In light of the fact that this has no bearing on our resolution of this issue, we deny appellant's motions as moot.

Accordingly, appellant is unable to demonstrate that the police presence in this case created an unacceptable risk of the jury considering impermissible factors. *See Gibson*, 951 A.2d at 1139. Based on the foregoing, appellant's claim that his right to a fair trial was violated must fail.

Appellant's next two claims concern the trial court's various rulings on the admissibility of evidence, and we will address each of these issues in turn. "[T]he admissibility of evidence is a matter addressed to the sound discretion of the trial court and . . . an appellate court may only reverse upon a showing that the trial court abused its discretion." *Commonwealth v. Cox*, 115 A.3d 333, 336 (Pa.Super. 2015) (citations and internal quotation marks omitted), *appeal denied*, 124 A.3d 308 (Pa. 2015). "An abuse of discretion is not merely an error of judgment; rather discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record." *Commonwealth v. Antidormi*, 84 A.3d 736, 745 (Pa.Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014) (citation omitted).

This court has long recognized that,

> [t]he threshold inquiry with admission of evidence is whether the evidence is relevant. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. In addition, evidence is only admissible where

> the probative value of the evidence outweighs its prejudicial impact.
>
> Otherwise relevant evidence may be excluded if its probative value is outweighed by its potential for prejudice. The probative value of the evidence might be outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, pointlessness of presentation, or unnecessary presentation of cumulative evidence.

*Id.* at 750, referencing Pa.R.E. 401, 402, and 403 (case citations and internal quotation marks omitted).

Appellant argues that the trial court abused its discretion in admitting a diagram of the crime scene into evidence because it was not properly authenticated under Pennsylvania Rule of Evidence 901 and contained "an unnecessary and prejudicial title: 'Aggravated Assault.'" (Appellant's brief at 30.) We disagree.

Rule 901 provides, in relevant part, that "[to] satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Demonstrative evidence, like the crime scene diagram at issue, may be admitted into evidence "provided that [it] fairly and accurately represents that which it purports to depict." ***Commonwealth v. McKellick***, 24 A.3d 982, 987 (Pa.Super. 2011) (citation omitted), ***appeal denied***, 34 A.3d 828 (Pa. 2011). This court has long recognized that "testimony from a witness who has knowledge that a matter is what it is claimed to be" is sufficient to satisfy the authentication

requirement under Rule 901.  *Id.* at 988 (citations and internal quotation marks omitted); *see also* Pa.R.E. 901(b)(1).  As with all other evidence, a trial court should only admit such evidence when "its probative value outweighs its prejudicial effect."  *Commonwealth v. Serge*, 896 A.2d 1170, 1177 (Pa. 2006), *certiorari denied*, 549 U.S. 920 (2006).

Instantly, the record reflects that the trial court acted within its discretion in admitting the crime scene diagram into evidence.  At trial, the Commonwealth laid a proper foundation under Rule 901(b)(1) by presenting the testimony of Officer Maurer, who collected the forensics evidence at the scene.  (Notes of testimony, 5/16-17/17 at 85.)  Officer Mauer's testimony clearly established that the evidence in question was what it was purported to be, a diagram of the area where the crimes in question occurred.  Specifically, Officer Maurer testified as follows:

> Q.   In this case did you respond to the area of 14th and Derry Street and surrounding blocks for that purpose?
>
> A.   Yes.
>
> Q.   When did you arrive?
>
> A.   Shortly after I heard it announced over the radio the incident was taking place. I responded from Front and Paxton. I drove east on Paxton Street and north on 17th Street, and I found the two vehicles involved parked near 17th and Berryhill.
>
> Q.   Now, I'm going to show you what is marked -- a small copy pursuant to local rule -- as Commonwealth Exhibit No. 1. Does that fairly

> and accurately depict the area that you processed in August of 2014?
>
> A.   Yes.
>
> [COMMONWEALTH]:   Your Honor, I move for the admission of Commonwealth Exhibit No. 1.
>
> [APPELLANT'S COUNSEL]:   My previous objections to that exhibit, Your Honor, are on the record.
>
> THE COURT:   And we note your exception, and it is admitted.

*Id.* at 85-86.

Based on our review of the record, we discern no reason to believe that the crime scene diagram in question depicts anything other than "that which it purports to depict." **Serge**, 896 A.2d at 1177.  Moreover, we agree with the trial court that the inclusion of the phrase "Aggravated Assault" on the diagram in question was "merely reflective of the crime charged," and did not have such an undue prejudicial impact that a new trial was warranted.  (Trial court opinion, 1/6/17 at 7.)  Accordingly, appellant's authentication argument fails.

Appellant next argues that the trial court abused its discretion in denying his objection to various comments that the Commonwealth made on appellant's prior arrest during a sidebar conference.  (Appellant's brief at 38.)  Appellant avers that these comments were overheard by the jury and he suffered "unfair prejudice" as a result.  (*Id.* at 40-42.)  This claim is meritless.

The record reflects that this matter arose following appellant's attempt to introduce testimony that he had no prior criminal record. Specifically, appellant testified on direct examination as follows:

> Q.   And you have a license to carry that gun?
>
> A.   Yes. I have had a license for four years.
>
> Q.   In order to get that license, they do a background check.
>
> A.   Yes. They check everything. Everything.
>
> Q.   So you have no record?
>
> A.   No, because this is the first time in my --

Notes of testimony, 5/16-17/17 at 108.

Following the Commonwealth's objection to this testimony, the following discussion took place at sidebar:

> [COMMONWEALTH]: Your Honor, the question was, do you have a prior criminal record. Ordinarily, I would object to that because that is improper character evidence. I have forgone the objection for two reasons. One, the defendant has forgone presenting character testimony, so I'll give him this benefit. Ordinarily I would object to this, but I do have to note that he does have an arrest record in New York. It does not appear to have resulted in conviction. I do not intend to pursue that, but I note that for the record that I'm forgoing that because he's decided not to present character testimony. I just wanted to make a record of that.
>
> [APPELLANT'S COUNSEL]: I have to take exception because an arrest record and a conviction are different. If there is no conviction, then common parlance says you don't have a record.

- 13 -

> THE COURT:  I think they can hear you.  Why are you taking an exception? He's not going to raise it.
>
> [APPELLANT'S COUNSEL]:  The jury just heard this.
>
> THE COURT:  I don't think they heard anything. I think you're overreacting.

*Id.* at 108-109.

Contrary to appellant's contention, the record does not reflect that the jury was exposed to any improper comments made during sidebar.  Rather, the trial court made a brief observation that the jury could overhear appellant's counsel and then concluded that it did not hear any of the substantive sidebar discussion.  Thereafter, the trial court overruled appellant's anticipatory objection, and appellant failed to request a further curative instruction on this matter.  Accordingly, we find that his claim of prejudice is waived and no relief is due.  *See Commonwealth v. Sandusky*, 77 A.3d 663, 670 (Pa.Super. 2013) (stating, "[e]ven where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver." (citation omitted)).

Appellant's final two claims concern the scope of the Commonwealth's cross-examination of him during trial.  Our supreme court has long recognized that "[t]he scope of cross-examination is within the trial court's discretion, and this Court cannot disturb the trial court's determinations

absent a clear abuse of discretion or an error of law." ***Commonwealth v. Ramtahal***, 33 A.3d 602, 609 (Pa. 2011).

Appellant avers that the trial court abused its discretion in permitting the Commonwealth to elicit testimony from him during cross-examination that Federal agents had visited him 12 days prior to the incident in question and informed him that he was the subject of a federal criminal investigation. (Appellant's brief at 42.) Appellant maintains this testimony was irrelevant and inadmissible and that "[a]ny minimal relevance [wa]s certainly outweighed by undue prejudice[.]" (***Id.*** at 45.) For the following reasons, we disagree.

Here, the Commonwealth cross-examined appellant as follows:

> Q. I want to ask you now about the visit you had from Homeland Security, the four agents. Twelve days before the shooting you were visited by four federal agents.
>
> A. Yes.
>
> Q. One of them was Agent Cook, who testified earlier today.
>
> A. Yes.
>
> Q. They showed you their credentials?
>
> A. Yes.
>
> Q. They told you that because you were the subject of a federal investigation --
>
> [APPELLANT'S COUNSEL]: Objection. Objection, Judge. Objection on relevance.

> THE COURT:  I'm sorry.
>
> [APPELLANT'S COUNSEL]:  Objection first of all on relevance; second of all, that wasn't the testimony from Officer Cook; and, thirdly, this is beyond the scope of direct.

Notes of testimony, 5/16-17/17 at 120.  The trial court overruled appellant's objection.  (*Id.* at 121.)

Upon review, we conclude that appellant opened the door to this line of questioning by placing at issue his credibility as to whether he knew that the individuals he fired upon– POs Kinsinger and Foose –were law enforcement officers.  Appellant was charged, ***inter alia***, with two counts of assault of a law enforcement officer, 18 Pa.C.S.A. § 2702.1.  One of the requisite elements under Section 2702.1 is that the defendant has knowledge that the person he is firing upon is a law enforcement officer.  Specifically, Section 2702.1 provides, in relevant part, as follows:

> A person commits a felony of the first degree who attempts to cause or intentionally or knowingly causes bodily injury to a law enforcement officer, while in the performance of duty and **with knowledge that the victim is a law enforcement officer**, by discharging a firearm.

*Id.* § 2702.1(a) (emphasis added).

The record reflects that appellant testified on direct examination that he was not aware that the persons he fired his gun at were law enforcement officers and that he had no reason to harm the police:

> [A.]   The police -- when the car in front of me went into the alley, I followed him because I wanted

- 16 -

to take a picture. I did not know they were parole officers, never, because they never identified themselves. And I honked and I flashed my lights at them so they could identify themselves, because I wanted to know who those people were.

. . . .

Q.    Do you have any reason to harm anyone in law enforcement?

A.    Never, because I have several members of my family in my country who are policemen, and that was also my dream to become a policeman.

Q.    You have no problem with anyone in the probation department here in Harrisburg?

A.    Absolutely no. I play ball against a team of police officers.

Notes of testimony, 5/16-17/17 at 104, 111-112.

However, the fact that appellant was informed by Federal agents a mere 12 days prior to the incident in question that he was subject to a federal investigation creates reasonable inference that he believed the individuals who initially followed him in an unmarked dark-colored Ford sedan through four different street turns and then parked and waited for him outside his garage for "almost six minutes" were law enforcement officers of some kind and related to the underlying federal investigation. (***See id.*** at 29-30, 47-49, 101-102.) This inference goes directly to whether he testified credibly on direct examination. Moreover, appellant's testimony that he was aware he was under investigation by law enforcement is clearly relevant to

whether he possessed a motive to do harm against said law enforcement officers, and far outweighed any potential for prejudice.

"[E]vidence of bias, interest, or corrupt motive is generally admissible and a proper inquiry on cross-examination." ***Commonwealth v. Murray***, 83 A.3d 137, 159 (Pa. 2013) (citation omitted). Our supreme court has long recognized that "[c]ross-examination may be employed to test a witness' story, to impeach credibility, and to establish a witness' motive for testifying. ***Commonwealth v. Chmiel***, 889 A.2d 501, 527 (Pa. 2005) (citation omitted), ***certiorari denied***, 549 U.S. 848 (2006). Courts in this Commonwealth are "not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand . . . ." ***Antidormi***, 84 A.3d at 752 (citation and internal quotation marks omitted). Based on the foregoing, we discern no abuse of discretion on the part of the trial court in permitting the Commonwealth to cross-examine appellant in this manner.

In his final claim, appellant argues that the trial court abused its discretion in permitting the Commonwealth to cross-examine him with regard to the fact that he was not a citizen of the United States and was subject to deportation if convicted in this matter.[5] (Appellant's brief at 48.) Specifically, the Commonwealth cross-examined appellant as follows:

---

[5] The record reflects that appellant was born in the Dominican Republic. (***See*** notes of testimony, 5/16-17/17 at 122.)

Q. Now, you obviously have concerns for your future?

A. Yes.

Q. You are a national of the Dominican Republic?

A. Yes. I was born and raised.

[APPELLANT'S COUNSEL]: Objection as to relevance.

[D.A. CHARDO]: Judge, you're going to instruct the jury that they can consider any future consequences of an adverse verdict in evaluating his credibility as a witness. If he knows he's subject to removal if convicted, that is a greater incentive than any other defendant.

THE COURT: Your objection is overruled.

Q. You are not an American citizen; is that correct?

A. Yes. No, I was not born here.

Q. And you're not a naturalized citizen?

A. I have a visa.

Q. You know that if you're convicted of an offense, you may be subject to removal from this country?

A. I perfectly understand it.

Notes of testimony, 5/16-17/17 at 122-123.

Appellant maintains that he was unfairly prejudiced by the Commonwealth's line of inquiry because at the time of his jury trial, "[t]he nation was in the midst of a contentious presidential campaign in which

immigration reform was a central focus [and t]he winning candidate vowed to build a massive wall to keep 'bad hombres' out of the United States of America." (Appellant's brief at 50.) We disagree.

Contrary to appellant's contentions, our review of the record indicates that this line of questioning was not inflammatory or done so with the intent to arouse the jury's sensibilities. Rather, appellant's status as a foreign national was relevant to his interest in the outcome of the case, namely, avoiding deportation if convicted, and was clearly a matter of credibility for the jury's consideration. Although we have found no authority in this Commonwealth that has specifically addressed the scope of cross-examination on this particular issue, our supreme court's holding in **Commonwealth v. Lesko**, 15 A.3d 345 (Pa. 2011), is particularly helpful. In **Lesko**, our supreme court recognized that a trial court is permitted to instruct the jury that it may consider whether the defendant has a vital interest in the outcome of the trial in evaluating his credibility. **Id.** at 397; **see also** Pennsylvania Suggested Standard Criminal Jury Instruction § 3.09(2). Based on the foregoing, appellant's final claim of trial court error must fail.

For all the foregoing reasons, we affirm appellant's June 29, 2016 judgment of sentence. Motion to remand for an evidentiary hearing and motion to continue denied as moot.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/2018